494 A.2d 964

**BARTER SYSTEMS, INC.**

v.

**Dennis J. ROSNER, et al.**

No. 1561, Sept. Term, 1984.

Court of Special Appeals of Maryland.

July 10, 1985.

256

Allan G. Slan, Kensington (Katz, Frome, Slan and Bleecker, P.A., Kensington, on brief), for appellant.

Gerald C. Baker, Lanham (Diemer & Baker, Lanham, on brief), for appellees.

Argued before WILNER, BLOOM and KARWACKI, JJ.

KARWACKI, Judge.

This appeal requires us to consider the extent to which Md.Code (1975, 1983 Repl.Vol.), § 15–209 of the Commercial Law Article, which addresses the rights of a creditor vis-a-vis property fraudulently conveyed by his debtor, is to be reconciled with Md.Code (1974), § 8–105(a) of the Estates and Trusts Article, which governs the order of payment to estate creditors.

On July 27, 1981, Stephen G. Rosner executed a "No Consideration" deed whereby he conveyed a condominium unit, located at 11213 Columbia Pike, Silver Spring, Maryland, with right of survivorship to himself and his brother, Dennis J. Rosner, one of the appellees. This deed was

subsequently recorded on September 23, 1981. On August 23, 1981, Stephen G. Rosner died.[1]

At the time of his death the decedent was indebted to numerous creditors in various amounts totalling $19,109.40. Among those creditors was Barter Systems, Inc., the appellant, to whom the decedent owed $9,275.13. On February 5, 1982, the appellant filed a claim for this debt against the decedent's estate in the Circuit Court for Montgomery County sitting as an orphans' court. The claim was allowed by the court on June 1, 1982. On September 30, 1983, the appellant filed in the Montgomery County Circuit Court a declaration which by its terms sought to enforce the "judgment" of the orphans' court against the decedent's estate.[2] The appellant accompanied the declaration with a motion for summary judgment. On November 14, 1983, the personal representative of the decedent's estate responded with an Answer denying that the estate was indebted to the

---

1. Stephen Rosner will hereafter be referred to as the decedent.

2. That pleading reads:
### DECLARATION
#### (Suit to Enforce Judgment)
Comes now Plaintiff, BARTER SYSTEMS, INC. (A Corporation), by KATZ, FROME & SLAN, P.A., its attorneys, and sues the Defendant, THE ESTATE OF STEPHEN G. ROSNER, Deceased, and as grounds therefore states as follows:

That on February 5, 1982, Plaintiff filed in Estate No. 03209–81 (Circuit Court for Montgomery County, Maryland, Sitting as an Orphans' Court) a Petition for Allowance of Claim, naming as Respondents, THE ESTATE OF STEPHEN G. ROSNER, Deceased, and SHERRY ROSNER, then Personal Representative of THE ESTATE OF STEPHEN G. ROSNER, Deceased.

Thereafter, by Order of the Court dated June 1, 1982, judgment was entered against THE ESTATE OF STEPHEN G. ROSNER, Deceased, and the Personal Representative of said Estate, SHERRY ROSNER, only in her capacity as Personal Representative of said Estate, in the sum of Nine Thousand Two Hundred Seventy-Five and 13/100 Dollars ($9,275.13).

The aforesaid judgment remains unpaid and unsatisfied.

WHEREFORE, Plaintiff demands judgment herein against the Defendant, THE ESTATE OF STEPHEN G. ROSNER, Deceased, in the sum of Nine Thousand Two Hundred Seventy-Five and 13/100 Dollars ($9,275.13).

appellant. On December 5, 1983, the Circuit Court for Montgomery County entered an order granting the appellant's motion for summary judgment and entered judgment for the appellant against the estate of the decedent in the amount of $9,275.13.[3] The appellant thereafter caused to be issued a writ of *fieri facias* directed against the aforementioned real property, the condominium unit located at 11213 Columbia Pike, Silver Spring, Md. Following the levy of this writ, the appellee, Dennis J. Rosner, who prior to this time was not a party to the proceedings, responded with an answer to levy, a plea of *nulla bona est,* and a motion to dismiss the writ, accompanied by his supporting affidavit. In his motion to dismiss the writ Mr. Rosner stated, as he did in his answer, that the property had been transferred to him by the decedent prior to the decedent's death and, therefore, it was not part of the decedent's estate. In its opposition to the motion to dismiss the writ of *fi fa,* the appellant alleged, *inter alia,* that the subject real property was an asset of the decedent's estate inasmuch as the conveyance of that property by the decedent to the appellee was fraudulent as to the appellant and other creditors of the decedent.

On November 2, 1984, a hearing on the motion to dismiss and the opposition thereto was held before the Circuit Court (Latham, J.). The court granted the motion to dismiss the writ of *fi fa,* holding that the appellant could not proceed directly against the property, since the deed showed on its face that the property was titled in the name of the appellee and, therefore, was not part of the decedent's estate. The court advised the appellant that before it could seek the relief it desired, it must first proceed to set aside the fraudulent conveyance.

The appellant appeals that order, contending that the court erred in dismissing the writ, and in not requiring the appellees to go forward at the November 2, 1984 hearing to

---

**3.** See our discussion *infra* regarding the effect of this "judgment."

prove the solvency of the decedent at the time of the transfer of the subject property, since the appellant had made a *prima facie* demonstration that the conveyance was fraudulent. The gravamen of the appellant's argument is that § 15–209(a)(2) of the Commercial Law Article permits a creditor to disregard a fraudulent conveyance and forthwith attach or levy execution on the property conveyed.[4] The appellant argues that by dismissing the writ, the lower court effectively foreclosed it from exercising its option to proceed directly against the fraudulently conveyed property. The appellees concede that ordinarily a creditor has such an option, but that because the situation *sub judice* involves estate proceedings, § 15–209(a) must be reconciled with applicable estate law. The appellees contend that the unique nature of an estate proceeding prohibits a creditor from pursuing the remedy provided in § 15–209(a)(2).

In responding to the issue before us, we find it necessary to retrace and comment upon the procedural path taken by this case. We begin in the Circuit Court for Montgomery County sitting as an orphans' court for that county pursuant to its constitutional grant of authority. Maryland Constitution article IV, § 20(b).[5] A judge of the

---

**4.** Section 15–209(a) of the Commercial Law Article provides:

(a) *Setting aside or disregarding conveyance.*—If a conveyance or obligation is fraudulent as to a creditor, the creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase or one who has derived title immediately or mediately from such a purchaser:

(1) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim; or

(2) Disregard the conveyance and attach or levy execution on the property conveyed.

**5.** That provision reads:

(b) The judges of the Circuit Court for Montgomery and Harford Counties shall each, alternately and in rotation and on schedules to be established by those judges, sit as an Orphans' Court for their County, and shall have and exercise all the power, authority and jurisdiction which the present Orphans' Courts now have and exercise, or which may hereafter be provided by law.

Montgomery County Circuit Court who sits as a judge in the orphans' court cannot, however, exercise his authority and power as a circuit court judge. *Willoner v. Davis*, 30 Md.App. 444, 448, 353 A.2d 267, *aff'd sub nom*, *Davis v. Davis*, 278 Md. 534, 365 A.2d 1004 (1976). When he presides in an orphans' court proceeding, he possesses no more authority in that case than that conferred by the legislature upon the Orphans' Courts of this State. *Id.* As the Court of Appeals stated in *Crandall v. Crandall*, 218 Md. 598, 600, 147 A.2d 754 (1959):

> [I]t must be remembered that Orphans' Courts are not courts of general jurisdiction; on the contrary, they are courts of special and limited jurisdiction only, and they cannot, under pretext of incidental or constructive authority, exercise jurisdiction not expressly conferred by law.

*See also Comptroller of Treas. v. Russell*, 284 Md. 174, 177, 395 A.2d 488 (1978).

■ Section 2–102(a) of the Estates and Trusts Article[6] enumerates the powers of the orphans' court:

> (a) *Powers*—The court may conduct judicial probate, direct the conduct of a personal representative, and pass orders which may be required in the course of the administration of an estate of a decedent....

The orphans court has jurisdiction to consider and adjudicate claims against an estate. *Schaefer v. Heaphy*, 45 Md.App. 144, 412 A.2d 107 (1980).[7] The process by which such claims are presented for payment was summarized by this Court in *Schaefer* as follows:

---

6. Hereinafter all section citations will be to the Estates and Trusts Article unless otherwise specified.

7. See that case for an enlightening review of the evolution of the orphans court's jurisdiction over claims made by creditors against an estate. Prior to the 1969 revisions of Article 93 of the Maryland Code, which by reason of the recodification may now be found in the Estates and Trusts Article, the orphans' court had the authority to "pass upon" creditors' claims, but had no method to enforce its determination. *Schaefer*, 45 Md.App. at 149, 412 A.2d 107.

ET, § 8–101(b) states that, after appointment of the personal representative and until the estate is closed, "the procedures prescribed by § 8–104 shall be followed" in enforcing claims against the estate. Section 8–104 provides three methods of presenting claims: (1) delivery to the personal representative; (2) delivery to the register of wills; or (3) commencement of a lawsuit against the estate (or a distributee of estate property) within the time allotted for filing claims.

If the creditor chooses the third option—direct resort to a court of law or equity—his success or failure will, of course, depend upon the judgment rendered therein. Section 8–107(d) provides that "[a] judgment in an action against a personal representative to enforce a claim against the estate of a decedent is an allowance of the claim."

If the creditor uses either of the other options … the process becomes governed by § 8–107(a) and (b). Subsection (a) gives the personal representative three choices—one implicit, two explicit. The implicit choice, of course, is to allow the claim in its entirety. If he chooses not to do that, he must notify the claimant either (1) that the claim is disallowed in whole or in a stated amount, or (2) that he will petition the orphans' court to determine whether the claim should be allowed. If the personal representative disallows the claim directly, … subsection (b) becomes operative. That indeed is the critical provision. It states, in relevant part:

> "If the claim is disallowed in whole or in a stated amount, the claimant is forever barred to the extent of the disallowance *unless he files a petition for allowance in the [orphans'] court or* commences an action against the personal representative or against one or more of the persons to whom property has been distributed." (Emphasis supplied.)

*Id.* at 151–52, 412 A.2d 107. We stated further:

[Section] 8–108(a) provides, in relevant part:

"Upon the expiration of six months from the date of the first appointment of a personal representative, the personal representative *shall pay the claims allowed against the estate* in the order of priority prescribed in § 8–105.... A person *with a valid unbarred claim or* with a valid unbarred judgment who has not been paid may petition the [orphans'] court *for an order directing the personal representative to pay the claim* to the extent that funds of the estate are available for payment." (Emphasis supplied.)

 . . . .

... A creditor whose claim has been disallowed by the personal representative may litigate the issue in the orphans' court; and, if he chooses to do so and is successful, the order of that tribunal is binding upon and enforceable against the personal representative. *Id.* at 153–54, 412 A.2d 107.

In the instant case, the Montgomery County Circuit Court, sitting as an orphans' court, apparently at the close of a plenary proceeding in that court,[8] acted pursuant to its authority and granted the appellant's petition for allowance of its claim against the decedent's estate. The effect of this allowance was to direct the personal representative of the estate to pay the appellant's claim, subject to the order of payment set forth in § 8–105(a).[9]  See

---

8.  The record is silent as to whether the issue of the appellant's claim for allowance was litigated in the orphans' court. However, we glean from references made at the November 2, 1984 hearing that the claim was initially disputed by the decedent's wife, who at the time was the personal representative of the estate.

9.  That subsection provides:
(a) *Insufficient assets.*—If the applicable assets of the Estate are insufficient to pay all claims in full, the personal representative shall make payment in the order provided in this subsection:
(1) Fees due to the register.
(2) Costs and expenses of administration.
(3) Funeral expenses as provided in Sec. 8–106.

§ 8–108. At that point, the appellant was in no better, or worse, position than other general creditors who had been granted similar allowances. Moreover, there is no method under our Estates and Trusts Article by which the appellant could seek to improve its position vis-a-vis similarly classed creditors. Indeed, § 8–105(b) prohibits preference of one general creditor over other general creditors. Nonetheless, and for reasons about which we can merely speculate, the appellant sought to have the orphans' court's allowance of its claim reduced to a judgment at law, and it thereupon filed in the Circuit Court for Montgomery County, sitting in its capacity as a court of law, the declaration referred to *supra*,[10] with the accompanying motion for summary judgment. In granting its summary judgment motion, however, the Circuit Court gave to the appellant no greater or different claim against the decedent's estate than it had received in orphans' court. Section 8–107(d) expressly states that "[a] judgment in an action against a personal representative to enforce a claim against the estate of a decedent is an allowance of the claim." The appellant's efforts at law were, therefore, merely duplicative of those made in orphans' court.

■ In any event, with this second and superfluous allowance of claim "at law" in hand, the appellant requested that

----

(4) Compensation of personal representative as provided in Sec. 7–601, for legal services as provided in Sec. 7–602, and commissions of licensed real estate brokers and salesmen.

(5) Family allowance as provided in Sec. 3–201.

(6) Taxes due by the decedent.

(7) Reasonable medical, hospital, and nursing expenses of the last illness of the decedent.

(8) Rent payable by the decedent for not more than three months in arrears.

(9) Wages, salaries, or commission for services performed for the decedent within three months prior to death of the decedent.

(10) Old age assistance claims under Sec. 77 of Article 88A.

(11) All other claims.

**10.** See footnote 2.

a writ of *fi fa* be levied against the Columbia Pike condominium in an effort to satisfy its judgment against the decedent's estate. Such action is strictly forbidden by § 8–114, which in pertinent part reads:

> (a) *General.*—An execution or levy shall not issue nor be made against property of the estate under a judgment against a decedent or a personal representative.

Had the subject real estate been part of the decedent's estate, the court below may well have realized immediately that what the appellant sought to do was in contravention of estate law, and, upon motion of the estate, have promptly dismissed the writ of *fi fa.* The waters were muddied, however, by two circumstances: 1) the property was titled in the appellee's name, and thus, unless and until further action was taken, not part of the decedent's estate; and 2) the appellant alleged that a fraudulent conveyance had transpired between the decedent and the appellee, thereby allowing the appellant to proceed directly against the property pursuant to § 15–209(a) of the Commercial Law Article. In this posture the case came on for hearing. During the course of that hearing, the trial judge recognized that the appellant could not lawfully proceed directly against the property, but must first sue to effect its return to the decedent's estate. The trial judge remarked: "You cannot file a lawsuit against an estate, in which you make a claim, and then go out and attach something and get involved in a fraudulent conveyance lawsuit as part of that garnishment." At the conclusion of the hearing, but without articulating the basis for his ruling, the court granted the motion to dismiss the writ of *fi fa,* thus precipitating this appeal.

The appellant contends that the trial court's judgment was in error and that, despite the existence of statutes governing the payment of claims by creditors against an estate, it is entitled to seek satisfaction of its claim pursuant to § 15–209(a)(2). The appellant's contention brings us

to the central issue raised by this appeal: to what extent does § 15–209 of the Commercial Law Article impact upon the statutory scheme promulgated by the legislature for the administration of estates? The short answer to that question, simply, is not at all.

Section 15–209 provides to creditors a general remedy against a debtor who has attempted through the conveyance of property to hinder, delay or defraud those creditors. *See Kennard v. Elkton Banking & Trust Co.,* 176 Md. 499, 500, 6 A.2d 258 (1939). As discussed above, §§ 8–104, 8–105, 8–107, and 8–108 set out the procedure by which creditors may present their claims against the estate of a decedent debtor, and receive payment by the personal representative for all allowed claims, subject to the strict order of priorities for satisfaction of those claims. Undeniably, upon a first reading of the subject sections, an apparent conflict arises as to their application to the case *sub judice.* We must, therefore, consider the applicable rules of statutory construction to reconcile these provisions to give as full effect to each as possible. *Haskell v. Carey,* 294 Md. 550, 558, 451 A.2d 658 (1982). Several of those rules are helpful in resolving this question. The cardinal rule of statutory construction is to ascertain and effectuate the actual intent of the legislature. *Soper v. Montgomery County,* 294 Md. 331, 335, 449 A.2d 1158 (1982). If there are two constructions that can be placed on a statute, one of which will result in its effectiveness, and the other which will make it nugatory, the court must construe it so as to render it effective. *Pickett v. Prince George's County,* 291 Md. 648, 661, 436 A.2d 449 (1981). Statutes are to be construed reasonably and with reference to the purpose to be accomplished; results that are unreasonable, illogical or inconsistent with common sense should be avoided. *Cider Barrel Mobile Home Court v. Eader,* 287 Md. 571, 583, 414 A.2d 1246 (1980). The statute's meaning and effect should be considered in light of the setting, the objectives and

purposes of the enactment, and the consequences that may result from one meaning rather than another, with the real legislative intent prevailing over the literal intent. *Fairchild Industries v. Maritime Air Service, Ltd.,* 274 Md. 181, 186, 333 A.2d 313 (1975). Finally, the legislature is presumed to have had and acted with full knowledge and information as to prior and existing law and legislation on the subject of the statute and the policy of prior law. *Board of Education of Garrett County v. Lendo,* 295 Md. 55, 63, 453 A.2d 1185 (1982). Applying these rules, we conclude that the legislature intended that the laws dealing with estate proceedings as set forth in the Estates and Trusts Article should govern claims made by a creditor against an estate. It is just as evident that the legislature did not intend that an estate creditor may completely circumvent the statutory scheme provided for the orderly payment of a decedent's just debts by resort to a commercial law remedy which allows creditors generally to enforce a judgment against fraudulently conveyed property.

The thrust of the appellant's claim is that the Columbia Pike condominium is property which rightfully belongs in the decedent's estate of which it is one of the general creditors. If that allegation is ultimately determined to be correct, the property will be returned to the estate, properly subject to the satisfaction, to the extent possible, of all estate claims pursuant to § 8–105(a). The appellant must stand in line along with other general creditors for satisfaction of its claim. The trial court was correct in dismissing the appellant's writ of *fi fa,* and in so doing, properly derailed the appellant's efforts to proceed directly against the subject property and to obtain an improper priority over the other general creditors of the estate.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY THE APPELLANT.