937 A.2d 846

**Robert BATTLEY, Personal Representative
in the Estate of Dorothy Battley**

v.

**Michael G. BANKS.**

No. 1177, Sept. Term, 2006.

Court of Special Appeals of Maryland.

Dec. 19, 2007.

640

T. Sean Daugherty, Rockville, for appellant.

Michael Banks, Rockville (Kamiko Battley, on the brief), Alexandria, VA, for appellee.

Panel: DAVIS, KRAUSER and BARBERA, JJ.

KRAUSER, J.

As personal representative of the Estate of Dorothy Battley, appellant Robert Battley appeals from three orders issued by the Circuit Court for Montgomery County, sitting as the Orphans' Court, which respectively granted appellee Michael G. Banks, the former guardian of Ms. Battley's property, guardianship commissions and attorney's fees. The first order permitted Banks to pay himself, "from the former guardianship bank account," his guardianship commissions before turning over Ms. Battley's assets to the personal representative. The second order directed Banks "to write himself a check" from the same bank account for the probate fees he had paid in opening Ms. Battley's estate. And the third order awarded Banks $300.00 in attorney's fees for his efforts to open Ms. Battley's estate and directed that a check in that amount be sent to Banks "immediately."

Appellant contends that in each instance, the orphans' court erred. For the most part we agree. Hence, we shall vacate in full the first and second orders, but as for the third order, we shall vacate it only to the extent that it instructed appellant to pay the funds immediately and not in accordance with the payment schedule in Md.Code (1974, 2001 Repl.Vol., 2006 Supp.), § 8–105(a) of the Estates and Trusts Article ("ET").

## Background

In November 2002, Dorothy Battley executed a will. The will named appellant, who was Ms. Battley's nephew, as the personal representative of her estate and bequeathed all of her property to Kimiko Battley, her deceased brother's wife. In the event Kimiko did not survive Ms. Battley, the property was to go to appellant, as the residuary beneficiary.

On February 18, 2003, Ms. Battley, suffering from dementia, was admitted to the Woodside Center, a nursing home in Silver Spring, Maryland. Five months later, on July 28, 2003, the Montgomery County circuit court appointed Banks as the guardian of Ms. Battley's property and appellant as guardian of her person.

On July 3, 2004, Ms. Battley passed away. Thereafter, Banks filed a petition in the circuit court requesting termination of the guardianship and authorization to transfer "all assets at the time of the death of Dorothy Battley" to the personal representative of her estate, who had not as yet been appointed. Banks further asked the court to order whomever was ultimately appointed the personal representative of Ms. Battley's estate to investigate the value of Ms. Battley's assets prior to July 9, 2003, the date on which he was appointed guardian of her property.

With that petition, Banks submitted the final "Annual Fiduciary Report," which consisted of a final accounting of Ms. Battley's assets and a proposed distribution of them. The report also contained Banks's claim for guardianship commissions in the amount of $861.47.

On September 10, 2004, the circuit court approved Banks's final accounting and proposed distribution, but specified that "the guardian's commissions be limited to $550.25." That same day, the court entered a separate order discharging Banks as the guardian of Ms. Battley's property and directing him to transfer "all assets at the time of [her] death" to the person "to be appointed" personal representative of her estate. But it denied Banks's request that the personal repre-

sentative investigate the value of Ms. Battley's "assets prior to July 9, 2003." [1]

Over a year later, after no action had been taken by anyone to open the estate, Banks filed a petition for judicial probate in the orphans' court, requesting, among other things, that he be appointed the personal representative of Ms. Battley's estate. At that time, he also filed a notice of judicial probate and paid the register of wills $52.84 in probate fees to open Ms. Battley's estate.

In the probate petition Banks asserted that the "only known assets" were a Bank of America account containing $1286.24 and a "Representative Payee account" at Woodside Center with $255.59 in it, although he claimed that he had been informed by Woodside Center that, prior to Ms. Battley's enrollment at that facility, she "appeared to have an account in excess of $70,000." The petition concluded with Banks's request for authorization to pay himself $550.25 in guardianship commissions previously approved by the circuit court.

Approximately two weeks later, appellant filed Ms. Battley's will, naming him as personal representative, with the register of wills. In response, Banks filed an "Amended Petition for Judicial Probate" with the orphans' court, requesting that appellant be removed as personal representative and that he, Banks, be appointed special administrator of the estate; that he, as special administrator, be authorized to distribute Ms. Battley's personal property to Kimiko Battley, in accordance with the will; and that he further be authorized to pay himself the circuit court-approved $550.25 in guardianship commissions owed to him. As grounds for these requests, Banks claimed that, at no time during the fifteen months following Ms. Battley's death, did appellant contact Banks or the nursing home; that appellant "did not claim [Ms. Battley's] body"; and that appellant had neither provided "adequate information regarding the financial affairs of his Aunt, Dorothy Battley," [2]

---

1. A line was drawn through this request by the circuit court, apparently when it signed the order.

2. It is unclear if Banks meant that appellant should have provided this information to Banks, the circuit court, or the orphans' court.

nor "provided information to the Court justifying his expenditures" as the former "[g]uardian of the [decedent's] person and property." [3]

In response to Banks's petition, appellant denied that he had ever abandoned his aunt's body, pointing out that he had, in fact, paid for her funeral expenses and further insisting he had "provided financial information including [Ms. Battley's] bank statements directly to Michael Banks." He added that, notwithstanding Banks's claims to the contrary, he had never been guardian of Ms. Battley's property and hence had never made expenditures in that capacity; and that, in any case, "the Court [had] never requested information from him." Finally, he asserted that Banks's "defamatory allegations" had no foundation in fact and that Banks himself had "failed to conduct an investigation" into Ms. Battley's assets while he was still the guardian of her property.

On March 22, 2006, after a hearing, the orphans' court ordered that Ms. Battley's will be admitted to probate and appointed appellant, in accordance with the will, as personal representative of Ms. Battley's estate. Following that decision, Banks filed a petition requesting the $550.25 in guardianship commissions previously authorized by the circuit court and for $300 in attorney's fees [4] for the actions he took to open Ms. Battley's estate.

On April 26, 2006, appellant, as personal representative, filed a petition to administer Ms. Battley's estate as a small estate.[5] He listed Banks's $550.25 in guardianship commissions as claims against the estate and sought reimbursement

---

3. According to Banks's petition, appellant had been the guardian of Ms. Battley's property before Banks's appointment in July 2003.

4. The $300 represented one hour of work at Banks's rate of $300 per hour.

5. The Maryland Code, Estates and Trusts Article, § 5–601(a) provides: "If the property of the decedent subject to administration in Maryland is established to have a value of $30,000 or less as of the date of the death of the decedent, the estate may be administered as a small estate."

of the $1223.95 in funeral expenses he had purportedly paid. The register of wills granted appellant's petition and issued to him the necessary letters of administration.

On June 20, 2006, the orphans' court held a hearing on Banks's request for both $550.25 in guardianship commissions and $300 in attorney's fees. During the hearing, Banks asserted he had not paid himself guardianship commissions, in accordance with the circuit court's earlier order authorizing him to do so, because of "an oversight." When the hearing ended, the orphans' court ruled that, since "Banks had a right" at the time the circuit court granted his request for guardianship commissions "to pay himself out of the remaining balance of [Ms. Battley's] funds, the sum of $550.25," he could "do it now since he did not do it before."

On June 22, 2006, the orphans' court awarded Banks the $300 in attorney's fees he had requested and ordered that a check in that amount "be sent to Michael G. Banks, Esq. immediately," but the court was silent as to Banks's requested guardianship commissions.

On July 5, 2006, Banks filed a claim against Ms. Battley's estate for the $52.84 in probate fees he had paid to open the estate, but appellant, as personal representative, disallowed that claim. Thereafter, both parties requested that the orphans' court issue a written order regarding Banks's guardianship commissions.

On July 25, 2006, the orphans' court entered two orders: one directing Banks to "write himself a check" from Ms. Battley's Bank of America account "in the amount of $52.84" for the probate fees and the other permitting Banks to "pay himself the commissions owed from the former guardianship bank account, pursuant to the previous order of court." This appeal followed.[6]

---

6. After appellant noted this appeal, the Maryland Department of Health and Mental Hygiene (DHMH) filed a claim against Ms. Battley's estate for $54,484.76 to recover expenditures made by the Maryland Medical Assistance Program on behalf of Ms. Battley as a Medical Assistance recipient. That claim, however, was disallowed and then ultimately

### Motion to Strike Appendix to Banks's Brief

Appellant moves to strike the appendix to Banks's brief, which consists of a letter from Banks to appellant requesting "all asset information related to the Dorothy Battley Estate," Banks's petition for termination of guardianship in the circuit court, and a receipt from the register of wills for Banks's payment of the sum of $52.84. Appellant argues that the documents were not introduced below, and hence should not be considered on appeal. Banks has filed no opposition.

Because the record confirms appellant's assertion that neither of these two documents were introduced below and because ordinarily such documents will not be considered on appeal, we will grant this motion. *See, e.g., Prince George's County v. Local Gov't Ins. Trust,* 388 Md. 162, 170 n. 6, 879 A.2d 81 (2005).

### The Guardianship Commissions

Appellant claims that the orphans' court erred in permitting Banks to pay himself, from the former guardianship bank account, $550.25 in guardianship commissions before turning over that account to appellant as the personal representative of the estate. Even though the circuit court had previously approved the commissions, he argues that, once the guardianship was terminated, Banks, as guardian, was not permitted by law to do anything other than turn over that account to appellant without deducting any commissions. When that was done, Banks's claim for guardianship commissions would then be treated as a general creditor's claim, according to appellant, and paid in accordance with ET § 8–105(a)[7], which

---

withdrawn by the DHMH based on representations by appellant that the estate was insolvent.

7. ET § 8–105(a) states:

   If the applicable assets of the estate are insufficient to pay all claims in full, the personal representative shall make payment in the following order:

   (1) Fees due to the register;

   (2) Costs and expenses of administration;

governs the order of payment of claims when the assets of a decedent's estate "are insufficient to pay all claims in full." *Id.*

A person appointed as the "guardian of the property of . . . a disabled person," pursuant to ET § 13–201(a), becomes "vest[ed]," under ET § 13–206(c), with "title to all property of the . . . protected person that is held at the time of appointment or acquired later." His activities are overseen by the circuit court, which has "exclusive jurisdiction over protective proceedings for disabled persons," under ET § 13–105(b). A guardian of the property may, among other things, "pay or apply income and principal from the estate as needed for the clothing, support, care, protection, welfare, and rehabilitation of the disabled person," under ET § 13–214(b)(2). In administering the disabled person's estate, a guardian is required under ET § 13–212 to "exercise the care and skill of a man of ordinary prudence dealing with his own property." And, for his efforts, the guardian is entitled, under ET § 13–218, "to the same compensation and reimbursement for actual and necessary expenses as the trustee of a trust." [8]

---

(3) Funeral expenses as provided in § 8–106 of this subtitle;

(4) Compensation of personal representatives as provided in § 7–601 of this article, for legal services as provided in § 7–602 of this article, and commissions of licensed real estate brokers;

(5) Family allowance as provided in § 3–201 of this article;

(6) Taxes due by the decedent;

(7) Reasonable medical, hospital, and nursing expenses of the last illness of the decedent;

(8) Rent payable by the decedent for not more than three months in arrears;

(9) Wages, salaries, or commission for services performed for the decedent within three months prior to death of the decedent;

(10) Old age assistance claims under Article 88A, § 77 of the Code; and

(11) All other claims.

**8.** The provisions governing guardianships have been in force since 1969, when the Legislature enacted Article 93A, entitled "Protection of Minors and Other Persons Under Disability," for "the revision and recodification, in a uniform structure, of the laws relating to guardians, committees, conservators, and the protection of property of minors, incompetents, drunkards, senile persons, and other persons generally unable to manage their affairs and property . . . and providing rules

Unfortunately, there is no provision in the Estates and Trusts Article or in the Maryland Rules explaining exactly how and when this compensation is to be paid upon the death of the ward. Lacking a specific provision addressing this issue, we turn for guidance to the more general provisions of the applicable statutes and rules governing how a guardianship is to be terminated and how the property of the disabled ward is to be distributed after he or she dies. *See, e.g., Corby v. McCarthy,* 154 Md.App. 446, 492, 840 A.2d 188 (2003) (" '[I]n determining a statute's meaning, courts may consider the context in which a statute appears, including related statutes . . . .' " (quoting *Ridge Heating, Air Conditioning & Plumbing v. Brennen,* 366 Md. 336, 350–51, 783 A.2d 691 (2001))).

At the outset, we note that, under ET § 13–221, upon the death of a ward, "his personal representative, the guardian, or any other interested person may petition the court to terminate the guardianship proceedings" and that, under ET § 13–221(c) the "[t]ermination and final distribution of [his] estate" is to "be made in compliance with the provisions of the Maryland Rules, applying to a fiduciary."

The principal Maryland Rule governing the termination of a guardianship and the final distribution of guardianship assets is Rule 10–710. Successive sections of that rule state that "[g]rounds for the termination of a fiduciary estate shall include . . . the death of the minor or disabled person," Rule 10–710(a); that "[w]ithin 45 days after the fiduciary discovers that the grounds for termination exist, the fiduciary shall file a petition requesting the court to terminate the estate," Rule 10–710(b); that "the petitioner shall file with the petition a copy of the death certificate," Rule 10–710(e)(4); and that the petitioner shall "give notice of the filing of the petition to the persons named as distributees in the proposed final distribution, to the other persons entitled to notice of annual accounts,

---

relating to guardians of the person of minors and other disabled persons." 1969 Md. Laws, Chap. 4. Article 93A was subsequently recodified as the Estates and Trusts Article, §§ 1–101 to 15–409. 1974 Md. Laws, Chap. 11. It is presently codified as the Estates and Trusts Article, §§ 13–101 to 13–403, 2001 Md. Laws, Chap. 35.

and to all other persons designated by the court," Rule 10–710(g).

The rule also provides that "[i]f the petitioner is the fiduciary, the petitioner shall file with the petition a final accounting containing the same information required in annual accountings by Rule 10–708,[9] together with the proposed final distribution of any remaining assets of the estate." Rule 10–710(f).

But, as for the disposition of the deceased ward's assets, we must turn to a provision of the Estates and Trusts Article which governs the estates of decedents, regardless of their ante-mortem status. And that is ET § 1–301(a), which provides that "[a]ll property of a decedent shall be subject to the estates of decedents law, and upon the person's death shall pass directly to the personal representative, who shall hold the legal title for administration and distribution...." Under ET §§ 2–101 and 2–102, any claims against that property fall under the jurisdiction of the "orphans' court," "or the court exercising the jurisdiction of the orphans' court."

It is a basic canon of statutory construction and one to which we routinely subscribe that when statutes are *in pari materia*, "it is presumed that the [Legislature] ... intended ... [them] to blend into a consistent and harmonious body of law." *State v. Bricker*, 321 Md. 86, 93, 581 A.2d 9 (1990). "Therefore, various consistent and related enactments, although made at different times and without reference to one another, nevertheless should be harmonized as much as possible." *Id.*

The same canon applies to rules and statutes that are in *pari materia*. As we stated in *Davis v. Mills*: "When the Maryland Rules deal with the same subject matter as a statute, [the relevant rules and statutes] are to be 'construed so as to harmonize with each other and not produce an

---

9. Rule 10–708 requires the guardian, in the annual accountings, to submit information in the format provided by that rule, concerning the ward's assets and income, and disbursements made on the disabled the ward's behalf.

unreasonable result.' " 129 Md.App. 675, 678–79, 743 A.2d 806 (2000) (quoting *Johnson v. State*, 274 Md. 29, 41, 333 A.2d 37 (1975)).

■ Applying this venerable rule of interpretation to the above mentioned statutes under the Estates and Trusts Article, we conclude that, under ET § 1–301(a), when a ward dies, all the ward's property becomes the assets of his decedent estate, and where a personal representative has been appointed to the ward's estate, title vests immediately, in that person. In short, the ward's assets, upon his death, become the assets of his decedent estate. The guardian's duties are then reduced to filing a petition to terminate the estate together with a final accounting and proposed final distribution of the ward's property, pursuant to Rule 10–710(b) and ET § 13–221, and thereafter to transfer to the personal representative all of the decedent's property, as required by ET § 1–301(a).

Moreover, after death of the ward, the guardian may be awarded guardianship commissions. Rule 10–710(f) states that the guardian of the property who files a petition to terminate his guardianship upon the ward's death "shall file with the petition a final accounting ... together with the proposed final distribution of any remaining assets of the estate." This "proposed final distribution" does not exclude the guardian's compensation.

But the circuit court's right to approve guardianship commissions does not imply, in this instance, the authority to permit the guardian of the property to pay himself those commissions before handing the deceased ward's property over to the personal representative. For, as we have previously pointed out, under ET § 1–301(a), "[a]ll property of a decedent shall be subject to the estates of decedents law, and upon the person's death shall pass directly to the personal representative, who shall hold the legal title for administration and distribution...." That means that, at the moment of the ward's death, his assets under the guardianship immediately become assets of his estate. An order by the orphans' court allowing the guardian to collect his commissions before hand-

ing his former ward's assets over to the personal representative would then be, in effect, an order permitting a former guardian to invade the assets of the decedent's estate. And Maryland law does not permit such an intrusion. The orphans' court may only allow the claim and direct the personal representative to pay that claim subject to the hierarchy of claims set forth in ET § 8–105(a). *See Barter Systems, Inc. v. Rosner*, 64 Md.App. 255, 264, 494 A.2d 964 (1985) (citing *Schaefer v. Heaphy*, 45 Md.App. 144, 153–54, 412 A.2d 107 (1980)).

Indeed, ET § 13–214 specifies the distributions that a guardian may make "without court authorization or confirmation": when a minor ward attains majority; when the disability of a ward ceases; and when a minor or disabled person dies.[10] In the first two situations, the guardian, according to ET § 13–214(c)(1)–(2),[11] "shall" first "meet[ ] all prior claims and expenses of administration" before distributing the estate to the former minor or disabled person.

But in the third situation, that is, when the ward dies, the guardian has no statutory authority to meet all prior claims and expenses of administration (which would of course include guardianship commissions) before distributing the assets of the decedent to the personal representative of the decedent's estate. In fact, when the ward dies, the guardian is authorized, by ET § 13–214(c)(3), only to "deliver to the appropriate

---

**10.** ET § 13–214(c)(4) further provides: "If a guardianship is terminated for reasons other than the attainment of majority, cessation of disability, or death of the protected person, the guardian shall distribute the estate in accordance with the order of the court terminating the guardianship."

**11.** Those subsections provide respectively: "When a minor attains his majority, his guardian, *after meeting all prior claims and expenses of administration,* shall distribute the estate to the former minor as soon as possible. . . ." ET § 13–214(c)(1) (emphasis added); "If the guardian is satisfied that the disability of the disabled person has ceased or if the court has found . . . that the disability has ceased, the guardian, *after meeting all prior claims and expenses of administration,* shall distribute the estate to the former disabled person as soon as possible." ET § 13–214(c)(2) (emphasis added).

probate court for safekeeping any will of the deceased person in his possession, inform the personal representative or a beneficiary named in it that he has done so, and retain the estate for delivery to an appointed personal representative of the decedent or other person entitled to it."

■ In sum, where the termination of a guardianship is due to a minor ward attaining majority or the cessation of a disabled ward's disability, the guardian is permitted, without a prior court order, to meet all prior claims and expenses of administration before distributing the remainder of the person's estate. But, where the termination of a guardianship is due to the death of the ward, the guardian has no such authority. Thus, Maryland clearly disfavors a former guardian paying any "prior claims and expenses of administration," including guardianship commissions, from the assets of the former guardianship after the ward dies, in contrast to being directed to do so before distributing the property of the guardianship estate to a ward who attains majority or whose disability has ended.

For Banks to pay himself his guardianship commissions upon the ward's death, if it can be done at all, under ET § 13–214, requires a court order. But, as we have pointed out, such a court order would, under ET § 1–301(a), wrongly permit the former guardian to invade the assets of the decedent's estate.

Other states with statutes that fail, as Maryland's does, to directly address this issue have reached the same conclusion. *See, e.g., State v. Estate of Taylor,* 29 Colo.App. 231, 484 P.2d 1262, 1263 (1971) ("It is generally held, in the absence of statute ... that upon the death of a person under guardianship, the statutory scheme applicable to decedents' estates becomes operative, and that debts incurred during the guardianship are to be classified in accordance with the law fixing priorities in the distribution of decedents' estates."); *In re Bohnstedt,* 125 A.2d 580, 582 (Del.Ch.1956) ("[A]lmost but not all of the Courts which have considered our problem have concluded that after the death of the mentally ill person the trustee, absent statutory authority, has no power to pay

existing obligations. The creditors must file their claims in the estate proceedings.")

Moreover, those state courts that have taken the contrary position, that is, that, upon the death of a ward, the guardian has the right to collect his commissions before distributing the ward's assets to the personal representative, only underscore our point. Those decisions were based on state statutes and rules that clearly granted the guardian the right to pay himself any commissions owed him after the death of the ward. *See, e.g., Midland Nat'l Bank & Trust v. Comerica Trust Co. of Florida,* 616 So.2d 1081, 1084 (Fla.Dist.Ct.App. 1993) (Florida Probate Rules permit guardians "to pay from guardianship funds the final costs of administration ... including guardian and attorney's fees, which had been included in the final accounting as unpaid and which, either in the absence of objection or after objection and court resolution, would be paid by the guardian prior to distribution" of the remainder of the funds to the persons entitled to them.); *Treadway v. Motague–Elliston,* 138 Ariz. 133, 673 P.2d 331, 333 (App.1983) (The Arizona statute authorizes a conservator to reimburse himself, from the conservatorship estate, the "expenses of administration," including the "fees and expenses reasonably incurred in winding up the affairs of the conservatorship estate," before delivering the remaining estate to the personal representative of the deceased person's estate.)

No Maryland statute or rule grants comparable authority to a Maryland guardian of the property when the ward has died.[12] This lack of statutory authority is particularly

---

**12.** We are also mindful that some states treat guardianship commissions as liens on the decedent's estate. *See, e.g., In re Clanton's Estate & Guardianship,* 171 Cal. 381, 153 P. 459, 461 (1915) ("[W]e see no reason why [the guardian's] equitable lien [on the decedent's land] may not extend to the fund resulting from the sale of the interest of the decedent in the land."); *Riley v. Superior Court,* 49 Cal.2d 305, 316 P.2d 956, 960 (1957) ("[T]he court has jurisdiction to award the guardian fees and to declare a lien in the guardian's favor even though all the property has been turned over to the administrator of the deceased ward's estate."); *State v. Greenhaw,* 50 Ariz. 436, 72 P.2d 950, 951 (1937) ("[A]ll debts legally incurred by the estate of an incompetent

telling when orphans' courts are involved, because they "are not courts of general jurisdiction" but "are courts of special and limited jurisdiction only." *Barter Sys., Inc. v. Rosner,* 64 Md.App. 255, 262, 494 A.2d 964 (1985) (quoting *Crandall v. Crandall,* 218 Md. 598, 600, 147 A.2d 754 (1959)). Thus, they "cannot, under pretext of incidental or constructive authority, exercise jurisdiction not expressly conferred by law." *Barter Sys., Inc.,* 64 Md.App. at 262, 494 A.2d 964. The orphans' court therefore erred in permitting Banks to pay himself $550.25 in commissions from the former guardianship account before turning over that account to appellant.[13]

We are not unsympathetic to Banks's position and the possibility that, because of the small size of the estate and the priorities laid out in ET § 8–105(a), as a general creditor, his claim may be relegated to the bottom of the statutory list of payment priorities and thus he may never be paid his court-approved commissions totaling $550.25. We also recognize that there are sound reasons for allowing a guardian to collect his commissions from a former guardianship account before handing over that account to the personal representative of the ward's estate.

At least one court has observed that, just as the compensation for a personal representative in handling a decedent's

during the course of guardianship are just as much liens upon such estate as are formal mortgages thereon, and ... the administrator takes the estate subject thereto").

We decline to follow these states. A lien, in Maryland, may only be created by "contract, statute, or rule of law." *Montgomery County v. May Dept. Stores Co.,* 352 Md. 183, 195, 721 A.2d 249 (1998) (quoting *Chevy Chase Bank, FSB v. Chaires,* 350 Md. 716, 731, 715 A.2d 199 (1998)). Here, however, there is no contract. Nor is there any Maryland statute, rule, or law which grants a former guardian a lien for unpaid guardianship commissions on a deceased ward's estate.

**13.** Appellant also cites ET § 13–220 in support of the proposition that termination of a guardianship ends the "right and power pertaining to the office of guardian." That section, however, only addresses situations where a guardianship terminates due to the "death, disability, resignation, or removal" of the guardian, ET § 13–220(a), and does not address the termination of a guardianship as a result of the ward's death.

estate is accorded priority above general creditors, *see* ET § 8–105(a), the compensation for a guardian in handling a disabled person's property "should as a matter of equity enjoy the same priority in the guardianship estate and not be relegated to the status of [a] general unsecured" claim against the decedent's estate. *Midland,* 616 So.2d at 1086. That same court has commented on how "totally illogical" it is for a "rule to require the final report to include an amount reserved for unpaid, as well as anticipated, costs and fees if, when approved, such costs and fees are not to be paid by the guardian from guardianship assets." *Id.* at 1083. And still another court has pointed out that not to permit the guardian upon the death of the ward to satisfy all legal claims arising by virtue of the guardianship before turning over guardianship funds would result in "endless confusion created by contests between guardians on the one hand and executors or administrators on the other." *State v. Greenhaw,* 50 Ariz. 436, 72 P.2d 950, 951 (1937). But such policy considerations are for the Legislature to consider, not this Court. It is our task to apply the law as it is currently constituted. Indeed, we may not do otherwise.

Finally, appellant, relying on *DeFelice v. Riggs Nat. Bank of Washington,* 55 Md.App. 476, 462 A.2d 88 (1983), claims that "the [orphans'] court had no jurisdiction to interpret the orders of the circuit court in the first instance because no request had been made to determine title of the guardianship accounts which Banks had conceded in the filing of his petition ... were estate assets." But *DeFelice* has no applicability here. In that case, the personal representative sought to receive the insurance proceeds from the car accident in which the decedent had died. *Id.* at 477, 462 A.2d 88. When the personal representative learned that the insurance company had already paid the proceeds to a third party, he filed suit in the orphans' court to force that third party to return the proceeds to the estate. *Id.* The orphans' court found that the payment of the proceeds directly to the third party was appropriate. *Id.* We vacated that decision, holding that the orphans' court "did not have jurisdiction to consider the issue

of who was entitled to the insurance proceeds in question" because there was no statutory authority "for a personal representative to bring an action in the Orphans' Court to recover personal property claimed by" a third party. *Id.* at 478, 79, 462 A.2d 88.

But in the instant case, there is no dispute as to the title of the assets in question, that is, the guardianship account. Both parties agree that Ms. Battley owned the monies in that account. The dispute is whether Banks could withdraw his commissions from that account before handing over the account to appellant to administer.

### The Probate Fees

Appellant contends that the orphans' court erred in "permitting Banks to 'write himself a check' from the former guardianship account" for the $52.84 in probate fees he paid to open Ms. Battley's estate. Specifically, appellant argues that, after he disallowed Banks's claim for the $52.84 for "probate fees allegedly associated with his petition to administrate the estate and seeking his appointment as personal representative," Banks should have filed a "petition for allowance [with] the court" as required by ET § 8–107(b). Since Banks failed to do so, the court should not have, appellant claims, awarded Banks those fees. In fact, according to appellant, the $52.84 could only be paid to Banks by appellant, as the personal representative, in accordance with the payment priorities set out in ET § 8–105(a).

"It is well settled that the 'findings of fact of an Orphans' Court are entitled to a presumption of correctness.' " *Pfeufer v. Cyphers*, 397 Md. 643, 648, 919 A.2d 641 (2007) (internal citations omitted). "It is equally well settled, however, that interpretations of law by such courts are not entitled to the same 'presumption of correctness on review: the appellate court must apply the law as it understands it to be.' " *Id.* (internal citations omitted). "Thus, an appellate court ... must determine whether the conclusions of law made by a trial

court in the first instance are 'legally correct under a de novo standard of review.' " *Id.* (internal citations omitted).

On June 29, 2006, Banks filed a claim for $52.84 against Ms. Battley's estate with appellant who had, by that time, been appointed the personal representative of the estate. Approximately a week later, on July 5, 2006, Banks filed this claim with the register of wills. On that same day, he also filed a similar claim with the orphans' court, entitled "Supplemental Information for a Claim against Decedent's Estate," asking to be reimbursed for the $52.84 in probate fees that he had expended on behalf of the estate.

The following day, appellant sent Banks a notice of disallowance of his claim and filed this notice with the register of wills on July 7, 2006. Then, on July 25, 2006, the orphans' court entered an order, directing Banks to "write himself a check from" Ms. Battley's bank account "in the amount of $52.84." But Banks' claim for fees was barred under § 8–107(b) of the Estates and Trusts Article.

When appellant disallowed his claim, Banks failed, as required by ET § 8–107(b), to file a petition for allowance of the claim with the court and hence his claim was, under that subsection, "forever barred." For ET § 8–107(b) provides that if the personal representative disallows a claim, "the claimant is forever barred to the extent of the disallowance unless he files a petition for allowance in the court or commences an action against the personal representative ... within 60 days" after the personal representative mails the notice of disallowance.

### The Attorney's Fees

Appellant argues that the orphans' court erred in awarding Banks $300 in attorney's fees. Neither of the two statutes permitting such an award in estate matters, ET §§ 7–602 and 7–603, were applicable, he maintains, to Banks's predicament. He claims that Banks's services in opening the estate were "part of a guardian's duties for which commissions are allowable" and hence Banks should not be paid attorney's

fees for what his guardianship commissions should have covered. He further argues that "claims against a guardianship estate cannot be made after the guardianship has been terminated." And, finally, he claims that the orphans' court abused its discretion in not reducing the amount of fees, which, he suggests, were excessive in light of the size of the estate.

We agree with appellant that ET § 7–603 is not relevant to Banks's claim for attorney's fees. That section states that, "[w]hen a personal representative or person nominated as personal representative defends or prosecutes a proceeding in good faith and with just cause, he shall be entitled to receive his necessary expenses and disbursements from the estate regardless of the outcome of the proceeding." Clearly, this section does not apply to Banks, who was neither the personal representative nor a person nominated as personal representative.

But ET § 7–602(a) is relevant. That section states that "[a]n attorney is entitled to reasonable compensation for legal services rendered by him to the estate and/or the personal representative." Generally, such services must "have been rendered 'for the protection or benefit of the estate.' " *Banashak v. Wittstadt,* 167 Md.App. 627, 666, 893 A.2d 1236 (2006) (quoting ET § 7–401(y)). And services rendered "for the protection or benefit of the estate" include "the rare case where the assets of an estate are increased in value or protected from dissipation as the result of *an action brought by someone other than the personal representative for the benefit of the estate as a whole....*" *Clark v. Rolfe,* 279 Md. 301, 307, 368 A.2d 463 (1977) (emphasis added).

That was the case here. The orphans' court found that Banks's actions, for which he was charging $300 in attorneys' fees, were for the benefit of Ms. Battley's estate. It stated during the hearing that "[t]here's really no dispute, is there, that Mr. Banks had to open the estate ... I don't believe for one second that Mr. Banks would have gone to the trouble to open an estate, [if] in fact Ms. Battley had a will and he said, 'No, no, don't bother Mr. Banks, I've got a will and I'm going

to go ahead and file this and we'll take care of the stuff that's in the nursing home, and we'll get it out of your basement.' " When appellant pointed out that there had been a dispute over the appointment of the personal representative and that Banks had lost, the court responded that "the fact of the matter is that Mr. Banks did render services in the amount of $300 to the estate at the beginning of this whole thing. Whether he continued on as personal representative is a different issue."

The orphans' court's findings of fact are entitled to a presumption of correctness, *Pfeufer*, 397 Md. at 648, 919 A.2d 641, and that presumption has not been rebutted by appellant. No attempt was made by appellant to open Ms. Battley's estate for more than fifteen months after her death. Indeed, it was not until Banks attempted to rectify this omission by opening the estate himself that appellant submitted Ms. Battley's will to probate.

Moreover, appellant's counter-argument that Banks's attempt to open the estate was not for the benefit of the estate is without merit. It is true, as appellant suggests, that Banks's actions in attempting to become personal representative were contrary to Ms. Battley's wishes. But, more than fifteen months had passed since Ms. Battley's death, without appellant opening her estate. And the orphans' court concluded, based on Banks's representations as it was entitled to do, that appellant would not have begun probate proceedings had Banks not initiated those proceedings by filing a petition for judicial probate.

Nor is appellant's alternative position persuasive. He argues that, as it was Banks's duty, as the former guardian of Ms. Battley's property, to open the estate, he had no basis on which to claim attorney's fees on top of his guardianship commissions. He further points out that, "[f]rom the record, it appears that the orphans' court believed the petition for probate was done in the course of Banks's services as a guardian," that is, that it was "ministerial" work done as the

former guardian and not legal work for which he could obtain attorney's fees.

Except for certain duties prescribed by statute and rules, Banks's duties as guardian legally ended with the termination of the guardianship. Any actions he took thereafter to open Ms. Battley's estate went beyond what he was required to do as Ms. Battley's guardian. *See* ET §§ 1–301(a); 13–214(c); 13–221; Rule 10–710. While it is true that the orphans' court did state, during the hearing, that, when Banks was attempting to open the estate, he was "working as a guardian performing legal services [for Ms. Battley] . . . as part of what [he] should do with the balance of the assets that [he] had," and Banks did respond by stating that "[he] opened the estate" only "[a]fter repeated attempts" to contact appellant about Ms. Battley's "meager personal property" and the balance of what was in her bank account. Nonetheless, the reason the court awarded Banks attorney's fees was, as it put it: "There's really no dispute, is there, that Mr. Banks had to open the estate" because appellant would not have otherwise.

Furthermore, the distinction that appellant is attempting to make between "ministerial" work and legal services is not relevant here and his reliance on *Saint Ignatius Roman Catholic Congregation, Inc. v. Harvey*, 268 Md. 634, 303 A.2d 389 (1973) in support of that effort is misplaced. In *Harvey*, the personal representative of a decedent's estate, who was also an attorney, sought and received, from the orphans' court, both personal representative's commissions as well as counsel fees for services rendered on behalf of the estate. *Id.* at 636–37, 303 A.2d 389. The services rendered included preparation of, among other things, a federal estate tax return, a petition for probate, and a petition "to make distribution under the direction of the Orphans' Court." *Id.* at 638–39, 303 A.2d 389.

The Court of Appeals, however, reversed the lower court's grant of those fees, stating that "if all of these activities constituted legal services, it is difficult to identify the duties performed by [counsel] as personal representative for which he [also] sought and received compensation." *Id.* at 639, 303

A.2d 389. In short, the Court was disturbed that, if it permitted such fees under the circumstances of that case, the personal representative would be paid twice for the same work. Here, however, there is no risk of double compensation as Banks was not appointed as personal representative, and, as stated above, had no duties to perform for the estate after his guardianship was terminated, except to file the appropriate papers with the court and to hand over Ms. Battley's assets to the personal representative.

Appellant also contends that "claims against a guardianship estate cannot be made after the guardianship has been terminated." But Banks's claim for attorney's fees were filed against Ms. Battley's estate, not her guardianship assets.

Finally, appellant argues that even if the orphans' court did not err in awarding Banks attorney's fees, it abused its discretion in awarding him $300 for such fees as that amount was excessive when compared to the meager value of the estate. Compensation for legal work for the benefit of an estate must "be fair and reasonable in the light of all the circumstances to be considered in fixing the fee of an attorney." ET § 7–602(b). The "principal elements" to be considered by the orphans' court in determining the reasonableness of an award of attorney's fees include "the amount [of the requested fee] involved, the character and extent of the services, the time employed, the importance of the question, the benefit to the estate and the customary charges made for similar services." *Wolfe v. Turner*, 267 Md. 646, 653, 299 A.2d 106 (1973). Once an award is made, it "will not be disturbed in the absence of proof of abuse of discretion ... which generally means that the fee allowed is shown to be so unreasonably small or so unreasonably high as to amount to an abuse." *Id.*

The orphans' court had before it evidence as to the amount of the requested fee, the character of the service, the time employed, the importance of the work, and the benefit to the estate. It stressed that, without Banks's work, the estate would probably have never been opened.

On the other hand, appellant produced no evidence of the unreasonableness of the claimed fees at the hearing below, except to argue that the $300 charge was an "outrageous fee" for opening a "$1,200 estate" and to cite statutes providing guidelines for the payment of compensation to the personal representative or special administrator of a decedent's estate. ET §§ 7–601; 5–604(a)(3). But we fail to see how the guidelines for the payment of personal representative's or special administrator's commissions are relevant to the issue of the reasonableness of attorney's fees for opening an estate. We therefore find no abuse of discretion in the amount of attorney's fees awarded to Banks.

We do find, however, that the orphans' court erred in ordering that "a check . . . be sent to Michael G. Banks, Esq [*sic* ] immediately." That court could only, at most, direct the personal representative of the estate to pay Banks's claim, subject to the payment priorities set forth in ET § 8–105(a). *See Barter Sys.*, 64 Md.App. at 264, 494 A.2d 964.

### Prospective Application

Because of the long-standing division among the courts below as to whether to permit a former guardian to pay himself commissions from a former guardianship account before transferring that account to the personal representative of a deceased ward, because it would be grossly unfair for those guardians who have relied upon the decades-old practices of their localities permitting the pre-transfer collection of such fees, *see James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 536, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991) (internal citations omitted), and because there are, in fact, sound reasons for those well-established practices, we choose to apply this rule prohibiting such pre-transfer collections "to this case and prospectively to all such causes of action [occurring] after the filing of the opinion in this case." *Boblitz v. Boblitz*, 296 Md. 242, 273, 462 A.2d 506 (1983). In so doing, we apply "selective prospectivity," which "is distinguishable from pure prospectivity in that the new pronouncement applies to the case in which it is made and not solely to cases arising after

the pronouncement." *Polakoff v. Turner,* 385 Md. 467, 486, 869 A.2d 837 (2005).

**MOTION TO STRIKE APPENDIX TO APPELLEE'S BRIEF GRANTED.**

**ORDERS DIRECTING APPELLEE TO PAY HIMSELF GUARDIANSHIP COMMISSIONS AND PROBATE FEES VACATED.**

**ORDER AWARDING APPELLEE ATTORNEY'S FEES VACATED AS TO REQUIREMENT THAT "A CHECK SHALL BE SENT TO MICHAEL G. BANKS, ESQ IMMEDIATELY"; ORDER OTHERWISE AFFIRMED.**

**CASE REMANDED TO THE ORPHANS' COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**