962 A.2d 1069

**Emma ELDER**

v.

**Cherry Elder SMITH, Personal Representative of the Estate of Colonel Percy Elder, Sr.**

**No. 3099 Sept.Term, 2007.**

Court of Special Appeals of Maryland.

Dec. 31, 2008.

648

Harry Goldman, Jr. (Skeen Goldman, LLP, on the brief), Baltimore, MD, for Appellant.

Debra B. Cruz (Levin & Gann, PA, on the brief), Towson, MD, for Appellee.

Panel: JAMES R. EYLER, ZARNOCH, LAWRENCE F. RODOWSKY (Ret., specially assigned), JJ.

Opinion by JAMES R. EYLER, Judge.

In this appeal, Emma Elder, appellant, is attempting to satisfy a purported lien against real estate that is located in Anne Arundel County and known as 928 Beales Trail, Pasadena, Maryland 21122 ("Beales Trail"). Appellant owns a one-half interest in Beales Trail as a tenant in common with the estate of her former husband, Colonel Percy Elder, Sr. ("the decedent"). Appellant obtained the purported lien after the Circuit Court for Baltimore City entered a judgment in her favor against the decedent based on an unpaid monetary award against decedent, resulting from the couple's divorce. Unfortunately for appellant, she did not obtain and record the judgment until after the decedent's death. Thus, the Orphans' Court for Baltimore County concluded that appellant's purported lien was unenforceable. Accordingly, the orphans' court ordered appellant to release her lien and directed the personal representative of the decedent's estate, Cherry Elder Smith, appellee, to sell Beales Trail, place one-half of the net proceeds into the estate,[1] and administer the estate in accordance with Maryland Code (2006 Repl. Vol.), § 8–104 of the Estates and Trusts Article ("E.T."). Appellant contends that the orphans' court erred when it ordered her to release her lien against Beales Trail. We shall affirm.

---

1. It is undisputed that appellant is entitled to one-half of the proceeds as joint property owner.

### Factual Background

Appellant and the decedent divorced on February 19, 2002. As part of the resolution of property issues, the circuit court entered a monetary award in favor of appellant in the amount of $31,500 and also ordered the couple to sell Beales Trail and evenly divide the proceeds. The monetary award was not reduced to judgment at that time.[2]

The decedent died on November 8, 2005. In accordance with the decedent's will, on May 12, 2006, the orphans' court appointed appellee as the personal representative of the estate. The only asset in the estate was the decedent's one-half interest in Beales Trail. As of the time of the decedent's death, the decedent had not paid the monetary award, and Beales Trail had not been sold.

On May 9, 2006, appellant filed a claim against the decedent's estate in the amount of the monetary award. On May 16, 2006, appellant sought and obtained from the circuit court an order reducing the monetary award to a judgment.[3] On September 13, 2006, appellant sought and obtained from the circuit court an order substituting appellee as the judgment debtor. The latter order recites that a "Notice of Substitution" was served on appellee, but no response was filed. On December 29, 2006, appellant recorded the judgment in Anne Arundel County which, according to appellant, created a lien on Beales Trail. At that time, appellee was unaware of appellant's purported lien.

In February, 2007, appellant and appellee accepted a contract for the sale of Beales Trail in the amount of $86,000. On

---

2. Appellant's monetary award was not a judgment until appellant obtained a circuit court order reducing the award to a judgment. *See Herget v. Herget,* 319 Md. 466, 471, 573 A.2d 798 (1990) (stating that a marital award is not a judgment until a court reduces the award to a judgment); *see also* Maryland Code (2006 Repl. Vol.), § 8-205(c) of the Family Law Article.

3. The court entered judgment in the amount of $31,500 plus interest at the rate of 6% from the date of the monetary award to the date of judgment.

July 7, 2007, the orphans' court approved the contract. Settlement was scheduled for November 11, 2007. After settlement, appellee intended to distribute one-half of the net proceeds to appellant as the joint property owner and distribute the other half of the net proceeds to the estate. Prior to settlement, appellee discovered appellant's purported lien on Beales Trail and realized that, if the lien was valid and she had to distribute the estate's share of the proceeds to appellant, the estate would be insolvent.

Consequently, appellee refused to attend the settlement, wrote a letter to appellant disallowing appellant's claim against the estate, and on November 13, 2007, filed a "Motion for Clarification" in the orphans' court, arguing that appellant's purported lien was invalid. On November 28, 2007, appellant filed a response.

On January 11, 2008, the orphans' court held a hearing, and on February 15, 2008, issued a memorandum opinion and order. The orphans' court concluded that appellant's lien was unenforceable and, accordingly, ordered appellant to release the purported lien on Beales Trail. Additionally, the orphans' court ordered appellee to pay one half of the proceeds from the sale of Beales Trail to the estate and that appellee distribute the proceeds in accordance with E.T. § 8–104. Appellant noted a timely appeal.

## Discussion

 Appellant contends that her lien, established by virtue of Maryland Code (2006 Repl. Vol.), § 11–402(c) of the Courts and Judicial Proceedings Article ("C.J."), was valid without the necessity of filing a claim against the estate and comes within E.T. § 8–114(b).[4]

---

4. In her reply brief, appellant also contends that the orphans' court did not have jurisdiction. Ordinarily, we will not consider an issue when appellant raises it for the first time in a reply brief. *Gazunis v. Foster,* 400 Md. 541, 554, 929 A.2d 531 (2007) (explaining that appellate courts may decline to hear arguments that are raised for the first time in reply briefs). Nevertheless, the issue is one of subject matter jurisdiction. Orphans' courts have broad powers with respect to matters involving

Section 11–402 provides, in pertinent part, that a money judgment, indexed and recorded in a county other than the county in which the judgment was originally entered, constitutes a lien on the judgment debtor's interest in land located in the county in which it was recorded.

E.T. § 8–114 is entitled "enforcement of claims against estate" and provides:

(a) An execution or a levy shall not issue nor be made against property of the estate under a judgment against a decedent or a personal representative.

(b) The provisions of this section do not apply to the enforcement of mortgages, pledges, liens, or other security interests upon property in an appropriate proceeding.

In support of her arguments, appellant also relies on E.T. § 8–103(d) (exempting actions or proceedings "to enforce a mortgage, pledge, judgment or other lien, or security interest upon property of the estate" from the time requirements for filing a claim against an estate); *McHugh v. Martin,* 198 Md. 173, 81 A.2d 623 (1950); and *Polk v. Pendleton,* 31 Md. 118 (1869). As we shall explain, we disagree with appellant's interpretation of the statutes, and the reported decisions on which appellant relies are not on point.

First, we will restate the basic underlying issue in this case. When a claim against a decedent exists prior to the decedent's death and is reduced to judgment after the decedent's death, and the judgment gives rise to a lien under non-estate law, is the judgment creditor entitled to execute on that lien after the decedent's death? The general rule, followed by a majority of the states that have addressed the issue,[5] is that the priority of claims against a decedent's estate, in existence prior to the death of the decedent, is determined as of the date

---

the administration of the estate of a decedent. *See Kroll v. Fisher,* 182 Md.App. 55, 62, 957 A.2d 205 (2008). The decision in this case was within the orphans' court's jurisdiction.

5. In some states, the rule is based on common law, and in other states, it is based on statutory interpretation.

of death, and a lien obtained after the decedent dies is unenforceable. *See* L.S. Tellier, Annotation, *Rank of Creditor's Claim Against Decedent's Estate or His Rights in Respect of Property of Estate as Affected by Reduction of His Claim to Judgment Against Executor or Administrator, or Levy of Attachment or Execution,* 121 A.L.R. 656 (1939, Bluebook of Suppl. Dec. 1st Perm. Vol. 1946, 2d. Perm. Vol. 1952, 3d. Perm. Vol. 1958, 5th Perm. Vol. 1976, 7th Perm. Vol. 1990). We conclude that this is the law in Maryland.

This law underlies the relevant statutory scheme.[6] E.T. §§ 8–103 and 8–104 provide for the presentation of claims against an estate. E.T. § 8–105(a) provides for the order of payment of claims.[7] Section 8–105(b) provides that a "preference shall not be given in the payment of a claim over another claim of the same class." E.T. §§ 8–110, 8–111, and 8–112 address claims not yet due, secured claims, and contingent claims, respectively. E.T. § 8–114(a), quoted above, provides that a judgment creditor may not execute a levy to obtain a lien against property of the estate, in order to enforce a

---

**6.** The current statutory scheme dates from 1969, when Article 93 was enacted, implementing much of the report prepared by the Henderson Commission. *See* Second Report of Governor's Commission to Review and Revise the Testamentary Law of Maryland (1968). It is noteworthy that prior to that time title to real estate passed directly to heirs and devisees. *Goldman v. Walker,* 260 Md. 222, 226, 271 A.2d 639 (1970). As a result of the Commission's recommendations, the law was changed to provide that title to real estate passed to the personal representative. *See* E.T. § 1–301. Subsequent to the 1969 legislation, therefore, there was no distinction between real and personal property, to the extent relevant here. The Second Report of the Governor's Commission did not expressly address the issue before us. *Id.*

**7.** The order of priority is "[f]ees due to the register; . . . [c]osts and expenses of administration; . . . [f]uneral expenses . . .; . . . [c]ompensation of personal representatives . . ., and commissions of licensed real estate brokers; . . . [f]amily allowance . . .; . . . [t]axes due by the decedent; . . . [r]easonable medical, hospital, and nursing expenses of the last illness of the decedent; . . . [r]ent payable by the decedent for not more than three months in arrears; . . . [w]ages, salaries, or commission for services performed for the decedent within three months prior to death of the decedent; . . . [a]ssistance paid under the Public Assistance to Adults Program . . .; and . . . [a]ll other claims." E.T. § 8–105(a).

judgment. Nothing in this statutory scheme permits a creditor with a pre-death claim to enhance the priority of its claim after the debtor dies. In fact, the statutory scheme presumes that a claim's priority status is determined on the date that the decedent dies.

In light of the general rule mentioned above and the relevant statutory scheme, we draw three conclusions. First, we conclude that E.T. § 8–114(b) excepts only secured creditors who obtain their liens prior to death from § 8–114(a)'s prohibition. Thus, appellant's lien is unenforceable under subsection § 8–114(a). *See* 54 Op. Atty. Gen. 440 (1969) [8]; *In re Estate of Landis,* 48 N.J.Super. 382, 137 A.2d 635, 637 (Co.Ct.Prob.Div.1958); Allan J. Gibber, Gibber on Estate Administration § 6.38 (5th ed. 2008). Second, we conclude that E.T. § 8–103(d) refers only to secured claims in existence prior to the decedent's death. Third, we conclude that C.J. § 11–402(c), which creates a statutory lien,[9] does not govern post-death claims made against an estate. Again, the Estates and Trusts Article governs such claims, and there is nothing in that Article permitting a creditor with a pre-death claim to enhance the priority of its claim post-death. Appellant's judgment against appellee is merely an allowance of the claim. E.T. § 8–107(d).

Appellant argues that the orphans' court erroneously relied on *Barter Systems, Inc. v. Rosner,* 64 Md.App. 255, 494 A.2d 964 (1985), in reaching its conclusion. In *Barter Systems,* Stephen Rosner, on July 21, 1981, conveyed a condominium unit, with a right of survivorship, to himself and Dennis Rosner. *Id.* at 258, 494 A.2d 964. Stephen died on August 23, 1981. *Id.* at 259, 494 A.2d 964. Barter Systems, a general creditor of the decedent, filed a claim against Stephen's estate. *Id.* at 259, 494 A.2d 964. After the claim was allowed by the

---

**8.** Although not binding on this Court, attorney general opinions are entitled to consideration. *City of Baltimore Dev. Corp. v. Carmel Realty Assoc.,* 395 Md. 299, 327, 910 A.2d 406 (2006) (citing *Dodds v. Shamer,* 339 Md. 540, 556, 663 A.2d 1318 (1995)).

**9.** *Accord* Maryland Rule 2–621.

orphans' court, Barter Systems filed a complaint in circuit court, seeking to reduce its claim to a judgment. *Id.* The circuit court entered a judgment in favor of Barter Systems, and issued a writ of execution directed at the property. *Id.* at 260, 494 A.2d 964. Dennis filed a motion to dismiss the writ, arguing that the property was not part of Stephen's estate because Stephen conveyed the property to him prior to his death. *Id.* Barter Systems responded that the conveyance of the property was fraudulent as to creditors of the decedent. *Id.* The trial court dismissed the writ, explaining that Barter Systems could not enforce its judgment against the property because the property was not part of the estate, and thus Barter Systems first had to set aside the fraudulent conveyance. *Id.*

On appeal, Barter Systems relied on Maryland Code (2006 Repl. Vol.), § 15–209 of the Commercial Law Article ("C.L."), which provides that a creditor may satisfy a claim by disregarding a conveyance and executing on property that a debtor fraudulently conveyed to another party. *Id.* at 261, 494 A.2d 964. Dennis argued that C.L. § 15–209 did not apply to estate proceedings. *Id.* Thus, the question raised by the appeal was whether C.L. § 15–209 applied to estate proceedings. *Id.* at 267, 494 A.2d 964.

This Court held that C.L. § 15–209 did not apply to estate proceedings, and that the Estates and Trusts Article governs claims made by a creditor against an estate. *Id.* We explained that "the legislature did not intend that an estate creditor may completely circumvent the statutory scheme provided for the orderly payment of a decedent's just debts by resort to a commercial law remedy which allows creditors generally to enforce a judgment...." *Id.* at 268, 494 A.2d 964. We further noted that the attempt to execute on the property was forbidden by E.T. § 8–114(a). *Id.* at 266, 494 A.2d 964. Implicit in our decision was a recognition that Barter Systems, by virtue of obtaining a judgment after the decedent's death, could not improve its position. Thus, although not on point, *Barter Systems* is consistent with our reasoning and conclusion in this case.

Appellant's reliance on *McHugh v. Martin* is unavailing. 198 Md. 173, 81 A.2d 623. In *McHugh*, the plaintiff obtained a judgment against the defendant and, thus, had a statutory lien against the defendant's real property. *Id.* at 176, 81 A.2d 623. Subsequently, the defendant died. *Id.* The plaintiff did not file a claim in the estate, but rather attempted to enforce his lien *Id.* at 177, 81 A.2d 623. The estate argued that the lien was invalid because the plaintiff failed to file a claim against the estate. *Id.* The Court of Appeals observed that the plaintiff had a general statutory lien on the property and the right to enforce it followed the property "into the hands of any subsequent owner." *Id.* at 177, 81 A.2d 623. The Court held that the failure to file a claim against the estate did not change this result because the recorded lien provided constructive notice of its existence. *Id.* at 180, 81 A.2d 623. The Court did not address the question in the case before us because the judgment creditor in *McHugh* obtained the lien prior to death of the creditor.

*Polk v. Pendleton* is to the same effect. 31 Md. 118. In January, 1858, a creditor obtained a judgment lien against real property owned by the decedent. *Id.* at 121. In 1859, Polk purchased the property at a tax sale and took possession. *Id.* In 1861, the decedent died. *Id.* In 1864, the judgment creditor executed on its lien, the property was sold, and Pendleton purchased it. *Id.* Pendleton filed a bill in equity, challenging Polk's title. *Id.* at 121–22. The Court held that the equity court was without jurisdiction and Pendleton had to pursue his claim at law. *Id.* at 124–25. In dicta, the Court stated that the creditor's judgment lien was valid and enforceable. *Id.* at 122–24. As in *McHugh*, the lien was in existence prior to death.[10] *Id.* at 121.

For the reasons stated above, we affirm the judgment.

---

**10.** In her reply brief, appellant cites *Spurway v. Dyer,* 48 F.Supp. 255 (D.Fla.1942). The case discusses judgment liens, but has nothing to do with the issue before us.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.