987 A.2d 36

Emma ELDER

v.

Cherry Elder SMITH, Personal Representative
of the Estate of Colonel Percy Elder, Sr.

No. 34 Sept.Term, 2009.

Court of Appeals of Maryland.

Jan. 13, 2010.

Harry Goldman, Jr. (Skeen, Goldman, LLP, Baltimore, MD), on brief, for Petitioner.

Randolph C. Knepper and Debra B. Cruz (Levin & Gann, P.A., Towson, MD), on brief, for Respondent.

ARGUED BEFORE BELL, C.J., HARRELL,
BATTAGLIA, GREENE, MURPHY, ADKINS and
BARBERA, JJ.

BATTAGLIA, Judge.

We are asked to consider whether a monetary award entered two years prior to the death of a decedent in connection with the division of marital property upon divorce, though not reduced to judgment and recorded as a lien against real estate until after his death, is afforded priority in the statutory scheme of the Estates and Trusts Article.

Emma Elder and Colonel Percy Elder were married in 1976, but after twenty-six years of marriage and the birth of two children, they were divorced in the Baltimore City Circuit Court in 2002. The next year, Emma was awarded a total of $31,500 as a marital award and was to receive one-half of the proceeds of a sale of property located at 928 Beales Trail, Pasadena, Maryland, in Anne Arundel County, although the sale ultimately did not occur. Emma Elder's $31,500 marital award was not reduced to judgment and remained unsatisfied at the time of Mr. Elder's death.

Mr. Elder died on November 8, 2005 in Baltimore County, leaving a wife, Theresa, and a child by that marriage. Several months later, on May 1, 2006, Emma attempted to open an estate in Baltimore City, claiming that because she was the estate's largest creditor as a result of the unpaid $31,500 award, she should be appointed Personal Representative. Cherry Elder Smith, the sister of the decedent, however, having been named as Personal Representative in Mr. Elder's will, filed a "Small Estate Petition for Administration" in the Orphans' Court for Baltimore County on May 12, 2006, claiming that the Estate's only asset was decedent's one-half interest in Beales Trail. Subsequently, the Orphans' Court for Baltimore City dismissed Emma's petition for judicial probate, and estate administration in Baltimore County proceeded.

The Orphans' Court for Baltimore County subsequently approved a contract for the sale of the Beales Trail property

for $86,000. Although settlement was scheduled to take place in 2007, the sale was never consummated, for reasons described in a Memorandum Opinion and Order issued by the Orphans' Court, after the Personal Representative had asked for guidance regarding a lien filed by Emma against the Beales Trail property:

Counsel for Emma Elder filed a claim against the Estate on May 9, 2006. On May 16, 2006, Emma Elder obtained a Judgment from the Circuit Court for Baltimore City reducing her various marital awards to a judgment against Colonel Percy Elder in the amount of $31,500 ("Judgment"). On September 13, 2006, the Circuit Court for Baltimore City issued an Order of Substitution substituting Cherry Elder Smith, as the Personal Representative of the Estate of Colonel Percy Elder, as the Judgment Debtor in the place of Colonel Percy Elder. On December 29, 2006, Emma Elder recorded the Judgment in Anne Arundel County, intending to thereby attach a lien against the Beales Trail property.

In 2007, the Personal Representative and Emma Elder accepted a contract for sale of the Beales Trail Property. The Orphans' Court for Baltimore County approved the contract by Order dated July 7, 2007. The settlement on the Beales Trail property was scheduled for November 11, 2007. At settlement, the Personal Representative anticipated distribution of one-half of the net proceeds to Emma Elder as the joint property owner with the second half of the net proceeds distributed to Mr. Elder's Estate. Prior to settlement, the Personal Representative discovered Emma Elder's lien against the property in the amount of $31,500. The title company handling the settlement indicated that it was bound, without further Court Order, to distribute $31,500 to Emma Elder from the Estate's share of the proceeds. Without Mr. Elder's one-half share of the Beales Trail proceeds, the Estate will be insolvent.

The Orphans' Court ultimately ordered Emma to release her lien against Beales Trail, thereby enabling the retention of one-half of the proceeds from the sale in the Estate. The

Orphans' Court emphasized that, "[a] marital award does not carry with it a legal interest in another party's property," and therefore, the "marital awards granted to Emma Elder in 2003 did not constitute judgments," citing *Herget v. Herget,* 319 Md. 466, 471, 573 A.2d 798, 800 (1990). Because Emma's monetary award was reduced to judgment and recorded as a lien after Mr. Elder's death, the court reasoned, it was "not entitled to priority within the context of estate administration."

The Court of Special Appeals affirmed in a reported opinion, *Elder v. Smith,* 183 Md.App. 647, 962 A.2d 1069 (2008), holding that the statutory scheme embodied in the Estates and Trusts Article governing creditors' claims, does not permit "a creditor with a pre-death claim to enhance the priority of its claim after the debtor dies," relying, in part, on a finding that a majority of states adhere to the rule that the priority of claims against a decedent's estate "is determined as of the date of death." *Id.* at 652–54, 962 A.2d at 1072–73. Emma Elder then petitioned this Court for certiorari, which we granted, *Elder v. Elder Smith,* 408 Md. 148, 968 A.2d 1064 (2009), to address the following questions, which we have rephrased and reordered: [1]

1. The Petition for Certiorari included the following questions:
 I. Whether the enforcement of a lien of a recorded judgment against the real estate of a deceased judgment debtor is exempt from administration by an Orphans' Court, or, as the lower courts held, whether that real property becomes property subject to administration by the Orphans' Court because the lien was obtained by judgments recorded after the decedent's death?
 II. Whether the Orphans' Court and the Court of Special Appeals erroneously declared an exception from three statutes, absolute in their terms, which exempt from administration by the Orphans' Court, the proceeds from sale of real estate upon which a judgment lien has been obtained, *viz* Courts & Judicial Proceedings Article, Section 11–402(c), Estates and Trusts Article Section 8–103(d) and Estates and Trusts Article Section 8–114?
 III. Is the Orphans' Court without jurisdiction to adjudicate the manner of distribution of proceeds from sale of real estate which is subject to a judgment lien against decedent's ownership share in the land?
 IV. Whether the Orphans' Court is without jurisdiction to order Mrs. Elder to release her judgment lien?

I. Whether a monetary award entered against a decedent during his lifetime, though reduced to judgment and recorded as a lien against real property pursuant to Section 11–402(c) of the Courts and Judicial Proceedings Article, Maryland Code (1974, 2006 Repl.Vol.), after the decedent's death, entitles the claimant to priority under Sections 8–103(d) and 8–114(b) of the Estates and Trusts Article, Maryland Code (1974, 2001 Repl.Vol.)?

II. Whether an Orphans' Court lacks jurisdiction to order the release of a lien recorded pursuant to a money judgment?

We shall hold that a monetary award reduced to a judgment and recorded as a lien against real property after the decedent's death is not entitled to priority under the statutory scheme for estate administration. We shall further hold that an Orphans' Court cannot affect a lien recorded against real property either directly or by ordering a creditor to release such a lien.

## I. Introduction

A personal representative has the authority to allow or disallow a claim filed against an estate. Maryland Code (1974, 2001 Repl.Vol.), Section 8–107 of the Estates and Trusts Article.[2] If a claim is allowed, Section 8–105(a) of the Estates

---

**2.** All references to the Estates and Trusts Article are to Maryland Code (1974, 2001 Repl.Vol.), unless otherwise noted. Section 8–107 of the Estates and Trusts Article states in relevant part:

(a) *By the personal representative.*—If a personal representative intends to disallow, in whole or in part, a claim that has been presented within the appropriate time and in the form prescribed in § 8–104(b) or (c) of this subtitle, he shall mail notice to each claimant stating:
(1) That the claim has been disallowed in whole or in a stated amount; or
(2) That the personal representative will petition the court to determine whether a claim should be allowed.
(b) *Disallowance of claim.*—If the claim is disallowed in whole or in a stated amount, the claimant is forever barred to the extent of the disallowance unless he files a petition for allowance in the court or commences an action against the personal representative or against

and Trusts Article provides the order of priority of payment, with the exception of secured claims:

(1) Fees due to the register;

(2) Costs and expenses of administration;

(3) Funeral expenses as provided in § 8–106 of this subtitle;

(4) Compensation of personal representatives as provided in § 7–601 of this article, for legal services as provided in § 7–602 of this article, and commissions of licensed real estate brokers;

(5) Family allowance as provided in § 3–201 of this article;

(6) Taxes due by the decedent;

(7) Reasonable medical, hospital, and nursing expenses of the last illness of the decedent;

(8) Rent payable by the decedent for not more than three months in arrears;

(9) Wages, salaries, or commission for services performed for the decedent within three months prior to death of the decedent;

(10) Old age assistance claims under Article 88A, § 77 of the Code; and

(11) All other claims.

A secured creditor, nevertheless, may enforce a lien, to the exclusion of other creditors and without the necessity of notice of the claim to the personal representative. Sections 8–103 [3]

---

one or more of the persons to whom property has been distributed....

**3.** Section 8–103 of the Estates and Trusts Article provides in pertinent part:

(a) *General.*—Except as otherwise expressly provided by statute with respect to claims of the United States and the State, all claims against an estate of a decedent, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, are forever barred against the estate, the personal representative, and the heirs and legatees, unless presented within the earlier of the following dates:

(1) 6 months after the date of the decedent's death; or

(2) 2 months after the personal representative mails or otherwise delivers to the creditor a copy of a notice....

and 8–114 [4] of the Estates and Trusts Article. It is this status to which Emma Elder aspires, having reduced her marital award to judgment and purportedly perfected a lien on the Beales Trail property after the death of her former husband.

## II. Discussion

Emma Elder argues that the "plain meaning" of three statutory provisions controls the resolution of the present case. The first, Section 11–402(c) of the Courts and Judicial Proceedings Article, Maryland Code (1974, 2006 Repl.Vol.),[5] provides:

> (c) *Judgment of another court.*—If indexed and recorded as prescribed by the Maryland Rules, a money judgment constitutes a lien on the judgment debtor's interest in land located in a county other than the county in which the judgment was originally entered. . . .

The second, Section 8–103 of the Estates and Trusts Article states in relevant part:

> (a) *General.*—Except as otherwise expressly provided by statute with respect to claims of the United States and the State, all claims against an estate of a decedent, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, are forever barred against the estate, the personal representative, and the heirs and legatees, unless presented within the earlier of the following dates:

---

\* \* \*

(d) *Liens not affected.*—Nothing in this section shall affect or prevent an action or proceeding to enforce a mortgage, pledge, judgment or other lien, or security interest upon property of the estate.

4. Section 8–114 of the Estates and Trusts Article states:
 (a) *General.*—An execution or a levy shall not issue nor be made against property of the estate under a judgment against a decedent or a personal representative.
 (b) *Exception.*—The provisions of this section do not apply to the enforcement of mortgages, pledges, liens, or other security interests upon property in an appropriate proceeding.

5. All statutory references to the Courts and Judicial Proceedings Article are to Maryland Code (1974, 2006 Repl.Vol.), unless otherwise noted.

■■■■■■■■■■■■

\* \* \*

(d) *Liens not affected.*—Nothing in this section shall affect or prevent an action or proceeding to enforce a mortgage, pledge, judgment or other lien, or security interest upon property of the estate.

The third, Section 8–114 of the Estates and Trusts Article provides:

(a) *General.*—An execution or levy shall not issue nor be made against property of the estate under a judgment against a decedent or a personal representative.

(b) *Exception.*—The provisions of this section do not apply to the enforcement of mortgages, pledges, liens, or other security interests upon property in an appropriate proceeding.

Emma asserts that these provisions clearly afford her claim priority, because she properly obtained a lien against the Beales Trail property by recording her judgment in the land records of Anne Arundel County, and subsequently substituted Cherry Elder Smith, the Personal Representative, as judgment debtor.

■■■■■ We disagree with the Petitioner's assessment of the plain meaning of the three statutory sections. Plain meaning refers to the "ordinary and commonly understood meaning" of the words of a statute. *Addison v. Lochearn Nursing Home, LLC,* 411 Md. 251, 276, 983 A.2d 138, 153 (2009), quoting *Sears v. Gussin,* 350 Md. 552, 562, 714 A.2d 188, 192 (1998). Despite Petitioner's admonitions to "[r]ead the statute, read the statute, read the statute," the provisions she relies upon contain no specific language either permitting [6] or prohibiting [7] liens secured after death to be enforced to the exclusion of all other

---

6. The Court of Special Appeals, citing L.S. Tellier, Annotation, *Rank of Creditor's Claim Against Decedent's Estate or His Rights in Respect of Property of Estate as Affected by Reduction of His Claim to Judgment Against Executor or Administrator, or Levy of Attachment or Execution,* 121 A.L.R. 656 (1939, Bluebook of Suppl. Dec. 1st. Perm. Vol. 1946, 2d. Perm. Vol. 1958, 3d. Perm. Vol. 1958, 5th Perm. Vol. 1976, 7th Perm. Vol. 1990), referred to a minority of states that have embraced the notion that a lien recorded against a decedent's interest in real property after the decedent's death is enforceable. Massachusetts ostensibly

claims. In the absence of such, we turn to legislative history for guidance, but the history of Section 11-402(c) of the Courts and Judicial Proceedings Article, and Sections 8-103(d) and 8-114(b) of the Estates and Trusts Article, does not yield much to assist in our analysis.

---

appears to be the only state that may permit the enforcement of such a lien. Mass. Ann. Laws ch. 230, § 6 (LexisNexis 2009); *see also Herthel v. McKim,* 190 Mass. 522, 77 N.E. 695, 696 (1906); *Tracy v. Strassel,* 191 Mass. 187, 77 N.E. 700, 701 (1906). Other states included in the "minority," including Missouri, North Carolina, Pennsylvania, and Virginia in the annotation have since, apparently, enacted statutes abrogating that position. *See, e.g.,* Mo. Ann. Stat. § 473.440 (West 2007); N.C. Gen.Stat. § 28A-19-6 (2009); 20 Pa. Cons.Stat. Ann. § 3381 (West 2005); Va.Code Ann. § 64.1-187 (2007).

7. Some sixteen states, apparently, prohibit the enforcement of a lien recorded after a decedent's death. *See* 20 Pa. Cons.Stat. Ann. § 3381 (West 2005) ("Nothing in this code shall be construed as impairing any lien or charge on real or personal estate of the decedent which existed at his death."); *see also* Ala.Code § 43-2-152 (1991); Cal. Probate Code § 9300 (West 1991); Ga.Code Ann. § 53-7-91 (1997); Ind.Code § 29-1-14-16 (2009); Kan. Stat. Ann. § 59-1301 (2005); Mo. Ann. Stat. § 473.440 (West 2007); Neb.Rev.Stat. § 30-2494 (2008); Nev. Rev.Stat. § 147.210 (2009); N.C. Gen.Stat. § 28A-19-6 (2009); Okla. Stat. Ann. tit. 58, § 346 (West 1995); Or.Rev.Stat. § 115.070 (2007); Va.Code Ann. § 64.1-187 (2007); Wash. Rev.Code § 11.40.130 (2008); W. Va.Code Ann. § 44-2-28 (LexisNexis 2004); Wyo. Stat. Ann. § 2-7-710 (2009).

*See* Alaska Stat. § 09.35.060 (2008); *Sheehan v. Estate of Gamberg,* 677 P.2d 254, 256 (Alaska 1984) (relying in part on Section 09.35.060, which provides that execution may be issued on a judgment obtained before the debtor's death, in reasoning that a judgment lien cannot be created after the debtor's death); *see also* Ariz.Rev.Stat. Ann. § 12-1551 (2009); Ark.Code Ann. § 16-65-111 (2005); Colo.Rev.Stat. Ann. § 13-58-101 (West 2005); D.C.Code § 15-309 (2001); Idaho Code Ann. § 11-106 (2004); Iowa Code Ann. § 626.88 (West 1999); Ky.Rev. Stat. Ann. § 426.555 (LexisNexis 2005); Minn.Stat. Ann. § 548.07 (West 2000); Miss.Code Ann. § 11-33-75 (2004); Mont.Code Ann. § 25-13-103 (2009); N.J. Stat. Ann. § 2A:17-71 (West 2000); N.M. Stat. § 39-1-3 (2006); N.D. Cent.Code § 28-20-06 (2006); Utah Code Ann. § 78B-5-203 (2008) (indicating that a judgment obtained after a debtor's death may not confer upon the judgment creditor priority by virtue of a lien or other method of execution).

The Court of Special Appeals, in outlining the majority view, also referred to an opinion authored by the Maryland Attorney General in 1969. *See* 54 Op. Atty. Gen. 440 (1969) (reasoning that a judgment for unpaid child support obtained after the decedent's death was not afforded priority).

A review of the legislative history of Section 11–402(c) of the Courts and Judicial Proceedings Article indicates that it was first enacted in 1890, when the General Assembly added the following language to then Section 19 of Article 26, Maryland Code (1888):

19. [A]nd a certified copy of the docket entries from the clerk of the court where any judgment is obtained, or magistrate judgment originally recorded, when recorded upon the judgment record of any other court in the counties of this State or the city of Baltimore, shall be and constitute a lien, from the date of its being so recorded, upon the property of the defendant in said county or city of Baltimore, to the same extent as in the county or city, where the said judgment was originally obtained or magistrates judgment originally recorded.

1890 Maryland Laws, Chapter 314. The provision was renumbered as Section 20 of Article 26, Maryland Code (1939), but otherwise remained essentially the same until 1973, when the General Assembly enacted the Courts and Judicial Proceedings Article, repealing and recodifying former Section 20 of Article 26, Maryland Code (1957, 1966 Repl.Vol.) as follows:

(c) If indexed and recorded as prescribed by the Maryland Rules or the Maryland District Rules, a judgment constitutes a lien on the judgment debtor's interest in land located in a county other than the county in which the judgment was originally entered, except a lease from year to year or for a term not more than five years and not renewable.

1973 Maryland Laws, Special Session, Chapter 2. In 1989, the General Assembly repealed and re-enacted former Section 11–402(c) of the Courts and Judicial Proceedings Article (1974, 1984 Repl.Vol.), adding the language of "money judgment":

(c) If indexed and recorded as prescribed by the Maryland Rules, a money judgment constitutes a lien on the judgment debtor's interest in land located in a county other than the county in which the judgment was originally entered, except a lease from year to year or for a term not more than five years and not renewable.

1989 Maryland Laws, Chapter 114. At no time in this history was the validity of a lien recorded against real property after the debtor's death discussed.

We turn next to the legislative history of Sections 8–103(d) and 8–114(b) of the Estates and Trusts Article. The precursor to Section 8–103 was enacted in 1798 and provided:

5. Executors and administrators shall have full power and authority to commence and prosecute any personal action whatever, at law, or in equity, (as the case may require,) which the testator or intestate might have commenced and prosecuted, except actions of slander, and for injuries or torts done to the person; and they shall also be liable to be sued in any court of law or equity, (as the case may require,) in any action (except as aforesaid,) which might have been maintained against the deceased; and they shall be entitled to, or be answerable for costs, in the same manner as the deceased would have been, and they shall be allowed for the same in their accounts, provided the court awarding costs against them shall certify, that there were probable grounds for instituting, prosecuting or defending, the action on which a judgment or decree shall have been given against them.

1798 Maryland Laws, Chapter 101, Subchapter 8, Section 5.[8]

In 1929, then Section 106 of Article 93, Maryland Code (1924), was amended to permit a lawsuit against an executor or administrator for personal injuries caused by the decedent, if brought within a specified time period:

106. Executors and administrators shall have full power to commence and prosecute any personal action whatever, at law or in equity, which the testator or intestate might have commenced and prosecuted, except actions of slander; and they shall be liable to be sued in any court of law or equity, in any action (except for slander) which might have been maintained against the deceased; and they shall be entitled

---

8. A history of this early codification is described in Gans, *Sources of Maryland Testamentary Law,* 18 Trans. Md. State Bar Ass'n 193 (1913).

to and answerable for costs in the same manner as the deceased would have been, and shall be allowed for the same in their accounts, if the court awarding costs against them shall certify that there were probable grounds for instituting, prosecuting or defending the action on which a judgment or decree shall have been given against them; *provided, however, that any such action for injuries to the person to be maintainable against an executor or administrator must be commenced within six calendar months after the death of the testator or intestate.*

1929 Maryland Laws, Chapter 570, Section 2 (emphasis added). In 1937, the Legislature amended former Section 106 of Article 93, Maryland Code (1924, 1935 Supp.), authorizing executors and administrators to recover funeral expenses of the decedent under certain circumstances.[9] In 1949, Chapters 468 and 508 of the Maryland Laws amended then Section 109 of Article 93, which in 1951 was codified as Section 111 of Article 93. These two amendments in the same session created confusion, however, and the General Assembly then enacted Chapter 689 of the Maryland Laws of 1953, clarifying the prior amendments, increasing the cap on recoverable funeral expenses, and also extending the time period for bringing an action against the executor or administrator for personal injuries caused by the decedent.[10] And in 1966, the

---

**9.** Chapter 127 of the Maryland Laws of 1937 provided:

106. Executors and Administrators shall have full power to commence and prosecute any personal action whatever, at law or in equity, which the testator or intestate might have commenced and prosecuted, except actions of slander, provided, that if the death of the testator or intestate shall have resulted from the wrong for which any such personal action might have been commenced, then the Executor or Administrator shall be entitled to recover the funeral expenses of said testator or intestate, not to exceed, however, the sum of Three Hundred Dollars ($300.00)....

1937 Md. Laws, Chap. 127.

**10.** Chapter 689 of the Maryland Laws of 1953 stated:

111. Executors and Administrators shall have full power to commence and prosecute any personal action whatever, at law or in equity, which the testator or intestate might have commenced and prosecuted, except actions of slander, provided, that if the death of

General Assembly amended then Section 112 of Article 93, Maryland Code (1957, 1964 Repl.Vol.), to extend the time period for filing suit against an executor or administrator for personal injuries caused by the decedent, "in the event the deceased was covered by an existing insurance policy at the time of the occurrence." 1966 Maryland Laws, Chapter 642, Section 1; *see also Greentree v. Ferlitta,* 338 Md. 621, 630, 659 A.2d 1325, 1329–30 (1995) (reasoning that a claim against a decedent's estate, covered by an insurance policy, is timely if filed within the ordinary statute of limitations). Obviously, this history does not inform the current controversy.

Further, Sections 8–103(d) and 8–114(b) of the Estates and Trusts Article were developed in the Second Report of the Governor's Commission to Review and Revise the Testamentary Law of Maryland.[11] The Henderson Commission, as it was known, divided the testamentary law into 12 titles, with subtitle 8 prescribing "the procedures to be followed in handling

---

the testator or intestate shall have resulted from the wrong for which any such personal action might have been commenced, then the Executor or Administrator shall be entitled to recover the funeral expenses of said testator or intestate, not to exceed, however, the sum of Five Hundred Dollars ($500.00), in addition to any other damages recoverable in such actions; and they shall be liable to be sued in any court of law or equity, in any action (except slander) which might have been maintained against the deceased; and they shall be entitled to and answerable for costs in the same manner as the deceased would have been, and shall be allowed for the same in their accounts, ... provided, however, that any such action for injuries to the person to be maintainable against an executor or administrator must be commenced within six calendar months after the date of the qualification of the executor or administrator of the testator or intestate. 1953 Md. Laws, Chap. 689.

11. The Commission was appointed by Governor Tawes in 1965, under the Chairmanship of William L. Henderson, former Chief Judge of the Court of Appeals, pursuant to Joint Resolution No. 23, to revise and recodify the then archaic statutory framework, "in order to remove confusion concerning the location and intent of many sections of these laws as well as duplications and conflicts...." *Second Report of Governor's Commission to Review and Revise the Testamentary Law of Maryland, Letter of Transmittal* (1968). See Shale D. Stiller & Roger D. Redden, *Statutory Reform in the Administration of Estates of Maryland Decedents, Minors and Incompetents,* 29 Md. L.Rev. 85 (1969), for a discussion of the work of the Henderson Commission.

creditors' claims." Present Section 8–103(d) first appeared as Section 8–103(c) of the proposed legislation:

(c) *Liens not affected.* Nothing in this Section shall affect or prevent any action or proceeding to enforce any mortgage, pledge, lien, or security interest upon property of the estate.

This language was altered by the addition of the word "judgment" [12] in the 1969 enactment:

(b) *Liens not affected.* Nothing in this Section shall affect or prevent any action or proceeding to enforce any mortgage, pledge, judgment or other lien, or security interest upon property of the estate.

1969 Maryland Laws, Chapter 3. The provision was codified as Section 8–103(b) of Article 93, Maryland Code (1957, 1969 Repl.Vol.), and was later re-codified as Section 8–103(e) of the Estates and Trusts Article (1974) by Chapter 11 of the Laws of 1974. The Section was eventually renumbered, without revision, as present Section 8–103(d) by Section 1 of Chapter 496 of the Maryland Laws of 1989. Again, the history of the statutory provisions does not support the priority of liens recorded after death.

Present Section 8–114 of the Estates and Trusts Article originated in the Henderson Commission's proposal which provided:

No execution shall issue upon nor shall any levy be made against any property of the estate under any judgment against a decedent or a personal representative, but the provisions of this Section shall not be construed to prevent the enforcement of mortgages, pledges, liens or other security interests upon property in an appropriate proceeding.

---

12. The legislative history of former Section 8–103(b) indicates that the language of "judgment" refers to secured judgments. *See Second Report of Governor's Commission to Review and Revise the Testamentary Law of Maryland* 123 (1968) (noting that the Section "makes it clear that the failure of the *secured creditor* to file his claim does not impair his right against the security.") (emphasis added).

This Section was enacted without revision in Chapter 3 of the Maryland Laws of 1969. The provision was then repealed and re-codified by Chapter 11 of the Maryland Laws of 1974 as Section 8–114 of the Estates and Trusts Article, Maryland Code (1974), to provide:

> (a) *General.*—An execution or a levy shall not issue nor be made against property of the estate under a judgment against a decedent or a personal representative.

> (b) *Exception.*—The provisions of this section do not apply to the enforcement of mortgages, pledges, liens, or other security interests upon property in an appropriate proceeding.

The Revisor's Note indicates that the Section was substantively unchanged, but was divided "for organizational purposes." Again, the absence of relevant mention in the legislative history suggests that the General Assembly did not address whether a pre-death claim, reduced to judgment and recorded as a lien after the debtor's death, should be afforded priority under the statutory scheme.

Cherry Elder Smith, the Personal Representative, rather, asserts that after death, Mr. Elder had no actual interest in Beales Trail, when Emma purportedly created a lien, because real property passes immediately from a decedent upon death, pursuant to Section 1–301(a) of the Estates and Trusts Article.[13] It is this argument that we find to be dispositive in this case. The language of Section 1–301(a) of the Estates and Trusts Article, which also provided fodder for the Court of Special Appeals, provides:

> (a) *In general.*—All property of a decedent shall be subject to the estates of decedents law, and upon the person's death shall pass directly to the personal representative, who shall

---

**13.** Section 1–301(a) of the Estates and Trusts Article states:

(a) *In general.*—All property of a decedent shall be subject to the estates of decedents law, and upon the person's death shall pass directly to the personal representative, who shall hold the legal title for administration and distribution, without any distinction, preference, or priority as between real and personal property.

hold the legal title for administration and distribution, without any distinction, preference, or priority as between real and personal property.

Informative to the status of property of a decedent upon death within the meaning of this provision is a case in which the Ohio Court of Appeals addressed a factual situation on point, when faced with a statutory scheme that similarly neither expressly permitted nor prohibited the enforcement of a lien recorded against a debtor's interest in real property after the debtor's death. In *Brandon v. Keaton,* 90 Ohio App.3d 542, 630 N.E.2d 17 (1993), *appeal dismissed sua sponte,* 68 Ohio St.3d 1449, 626 N.E.2d 690 (1994), Michael Brandon, Melody Wiley, and William Wiley obtained judgments against Jimmie Keaton, in the amounts of $9,000, $1,000, and $5,000, respectively, on January 5, 1990. Mr. Keaton died on June 3, 1990, and within three days each creditor purportedly created a lien against the decedent's real property. The creditors initiated foreclosure proceedings, asserting that liens filed after Mr. Keaton's death entitled them to foreclose. The Ohio court concluded that the liens were invalid, recognizing that upon death, a decedent is no longer the title holder of real property. The court reasoned that "no lien is obtained by a certificate of judgment filed after the judgment debtor's death because the real property descends to the heirs at the time of death," citing *Dressler v. Bowling,* 24 Ohio St.3d 14, 492 N.E.2d 446, 448 (1986) ("It is well-settled that no lien is obtained by a certificate of judgment filed after the judgment debtor's death, since his real property descends to his heirs at time of death."). *Id.* at 18, 492 N.E.2d 446.

Although our Legislature rejected the notion that upon death, title passes immediately to the heirs and legatees of the decedent,[14] as in Ohio, it is notable that the Henderson Com-

---

14. Prior to the 1969 revision of the testamentary law in Maryland, title to a decedent's real property passed immediately to the heirs or devisees upon his death. *See Fleming v. Brunner,* 224 Md. 97, 104, 166 A.2d 901, 905 (1961). This rule was in effect at the time this Court

mission, in its draftsmanship, acknowledged that title to real property passes out of the decedent's hands at death:

> The Commission has rejected the concept ... that title to all property passes directly to the heirs or legatees, subject to the power or control over the property by the personal representative. The Commission felt that this dichotomy between title, on the one hand, and power, on the other, is unworkably vague and unnecessarily inconvenient. On the contrary, the Commission recommends the suggested wording of Section 1–301 in order to make it clear that the title to all property, both real and personal, and as to both testate and intestate estates, shall pass directly to the personal representative.

*Second Report of Governor's Commission to Review and Revise the Testamentary Law of Maryland,* 13 (1968). The underlying principle, then, is that upon death, title to real property passes out of the hands of the decedent. This conclusion holds true even when, as here, the Personal Representative is substituted as the "judgment debtor."

We conclude that the judgment obtained and recorded as a lien against Beales Trail after Mr. Elder's death based upon a marital award against him two years prior to his death, is not afforded priority under the statutory scheme embodied in the Estates and Trusts Article, because title to real property passes out of a decedent's hands after death.

---

decided *McHugh v. Martin,* 198 Md. 173, 81 A.2d 623 (1951), upon which Emma Elder relies. In *McHugh,* a creditor obtained a judgment in the Circuit Court for Washington County prior to the debtor's death, and the judgment immediately became a lien on the judgment debtor's land located in that county. *See* former Section 20 of Article 26, Maryland Code (1951). We concluded that the creditor could levy against the land held by the devisees. *Id.* at 177–78, 81 A.2d at 625; *see also Polk v. Pendleton,* 31 Md. 118, 122–23 (1869) ("Where a sole defendant dies after judgment, it may be revived, and execution had against his lands, by suing out a *scire facias* against the heirs and *terre-tenants,* without proceeding against the personal representatives.") (emphasis in original). Distinctively, the lien attached prior to the decedent's death. Conceivably, had it obtained after death, the rationale in the Ohio case would apply.

We turn now to the second question, namely, whether the Orphans' Court in Baltimore County could act to affect the lien recorded in Anne Arundel County, either directly, or by ordering Emma Elder to release "any and all liens" against the Beales Trail property. Emma Elder asserts that the Orphans' Court of Baltimore County, as a court of special and limited jurisdiction, was without jurisdiction "to fashion an order in the nature of an injunction requiring her to release her lien." Cherry Elder Smith, as Personal Representative, counters that orphans' courts possess broad authority to administer decedents' estates generally.

 Orphans' courts are not courts of general jurisdiction, but rather, have special and limited powers as proscribed by Section 2–102(a) of the Estates and Trusts Article:

(a) *Powers.*—The court may conduct judicial probate, direct the conduct of a personal representative, and pass orders which may be required in the course of the administration of an estate of a decedent. It may summon witnesses. The court may not, under pretext of incidental power or constructive authority, exercise any jurisdiction not expressly conferred.

While an orphans' court has the ability to effectuate the administration of an estate, *Kaouris v. Kaouris,* 324 Md. 687, 695, 598 A.2d 1193, 1196 (1991), citing *Clarke v. Clarke,* 291 Md. 289, 293, 435 A.2d 415, 417 (1981), the orphans' court is without jurisdiction to consider questions of title to real property.[15] *Talbot Packing Corp. v. Wheatley,* 172 Md. 365, 370–71, 190 A. 833, 834–35 (1937) (reasoning that the Orphans'

---

**15.** The Personal Representative cites *Goldman v. Walker,* 260 Md. 222, 271 A.2d 639 (1970), for the proposition that orphans' courts have had jurisdiction since 1970 to "determine decedents' interests in real property." Although it is true that prior to the 1969 revision, real property was not subject to estate administration, *Goldman* involved an action by a wife in the Circuit Court for Montgomery County to set aside a decree of divorce issued by a Nevada court, during the pendency of which, the husband died. *Id.* at 223, 271 A.2d at 640. The fact that the issue was whether the land in *Goldman* passed by way of survivorship does not affect our analysis regarding the ability of an orphans' court to release a lien.

Court for Talbot County was without jurisdiction to order the administrator of the decedent's estate to relinquish the decedent's leasehold interest in a farm cooperative upon petition by the farm corporation).

As courts of original and general jurisdiction, Section 1–501 of the Courts and Judicial Proceedings Article, Maryland Code (1974, 2006 Repl.Vol.), circuit courts, such as the Circuit Court for Baltimore City in the present case, have the authority to enter judgments upon which liens are based and to order their release. *See* Section 11–402 of the Courts and Judicial Proceedings Article; *see also* Rules 2–626 and 2–643. It is clear, then, that the Orphans' Court does not.

The Personal Representative's reliance on *Kroll v. Fisher*, 182 Md.App. 55, 957 A.2d 205 (2008), in this regard is inapposite. In *Kroll*, the nephew of the decedent filed a complaint in the Circuit Court for Allegany County, seeking an "independent accounting or audit" of the decedent's estate, alleging that the personal representative had engaged in "malfeasance." *Id.* at 58, 957 A.2d at 206. The Circuit Court dismissed the complaint, because jurisdiction properly was in the Orphans' Court, a ruling which was affirmed by the Court of Special Appeals, reasoning that alleged misconduct by a personal representative was within the province of the orphans' court. *Id.* at 62, 957 A.2d at 209. Authority to address alleged misconduct by a personal representative is not analogous to authority to affect land, however.

As a result, although the lien held by Emma Elder on the Beales Trail property is not afforded priority under the Estates and Trusts Article, the release of the lien must be effected in a different manner.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.**